# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **QUINTON ROATH,**<br>        Plaintiff<br><br>vs<br><br>**WILLIAM E. HASLAM, MARK GWYN, DAVID W. PURKEY, ANDREA CLARK**, and **JACK MORGAN**<br>        Defendants | Case No.<br><br>Hon. |

## COMPLAINT

### JURISDICTION and VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States and under 28 U.S.C. § 1343 to hear Plaintiff's claims to recover damages and to secure equitable relief under any Act of Congress providing for the protection of civil rights.

2. This action is also one for declaratory and injunctive relief as authorized by 28 U.S.C. §§ 2201–2202, and Fed. R. Civ. P. 57 and 65.

3. This Court has supplemental jurisdiction over all state law claims alleged in this complaint under 28 U.S.C. § 1367 as there is a common nucleus of operative facts between the state and federal law claims.

4. Venue is appropriate in the Middle District of Tennessee, Nashville Division, 28 U.S.C. § 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to this claim occurred.

1

5. Plaintiff Quinton Roath is a Franklin, Williamson County, Tennessee resident who was purportedly required to register on Tennessee's Sex Offender Registry (TSOR or SOR) pursuant to 42 U.S.C. 16901, *et seq.* after a conviction in U.S. District Court for the Middle District of Tennessee under 18 U.S.C. 1591(d) (obstructing enforcement, hereafter "obstruction of justice"), **an offense committed around August 5, 2009. Plaintiff Roath was NOT convicted of any actual unlawful or inappropriate sexual conduct with anyone**.

6. Defendant William E. Haslam is the Governor of the State of Tennessee. Governor Haslam is sued in his <u>official capacity</u> as the executive head of the State of Tennessee which maintains the Sex Offender Registry.

7. Defendant Mark Gwyn is the Director of the Tennessee Bureau of Investigation ("TBI"). Mark Gwyn is sued in his <u>official capacity</u>. As Director, Mark Gwyn maintains and oversees Tennessee's sex offender registry (TSOR) pursuant to T.C.A. 40-39-204(a) & (d) and 40-39-206(a). The TBI's responsibilities include enforcing the Act, maintaining the state's database of sex offenders, maintaining an Internet-accessible public sex offender registry, registering offenders (along with other law enforcement agencies), developing registration forms, providing statutorily-required notices to registrants, collecting registration fees, and coordinating with national law enforcement. See T.C.A. 40-39-203(I), 40-39-204(a) & (d), 40-39205(a) & (f), and 40-39-206. Defendant Gwyn also supervises Jeanne Broadwell who is the TBI General Counsel. Jeanne Broadwell regularly advises local law enforcement agencies with regards to the Tennessee Sex

Offender Registry (TSOR) and regularly maintains documents handed out by local law enforcement to registrants, such as the "Instructions Form" that purports to summarize the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 and which registrants are required to sign under threat of arrest. Local law enforcement regularly seek clarification from and follow the advise and directions given by Jeanne Broadwell and formulate their policies based on Jeanne Broadwell's opinion with regards to the TSOR laws.

8.     Defendant David W. Purkey is the Commissioner of the Tennessee Department of Safety and Homeland Security. David Purkey is sued in his <u>official capacity</u>. The Tennessee Department of Safety and Homeland Security includes the Driver Services Division which issues driver licenses and state identification cards which have a code denoting the holder as a sex offender.

9.     Defendant Andrea Clark is a detective with the CID Special Victims Unit of the Franklin Police Department, Franklin, Tennessee. Det. Clark is sued in her <u>individual capacity</u>. As part of her duties she personally receives annual reports by those required to register on the TSOR who reside or work within Franklin city limits. She also regularly conducts spot inspections of registrants' homes, including during holidays such as Halloween, and instructs registrants of their obligations under the TSOR laws (as she interprets them or as General Counsel for the TBI interprets them) and can and does threaten to have them arrested should they fail to comply with what she believes is required.

10.     Defendant Jack Morris is a sergeant with the Franklin Police Department, Franklin, Tennessee. Sgt. Morris is sued in his <u>individual capacity</u>.

3

11. Defendant City of Franklin is the employer of both Defendants Clark and Morris and maintains a policy or practice of denying the right to counsel to those on the sex offender registry who personally appear to update their information with counsel.

## GENERAL ALLEGATIONS

12. The Tennessee General Assembly passed its first sex offender registration law in 1994. 1994 Tenn. Pub. Acts, ch. 976. Until that time, Tennessee did not require anyone to register as a sex offender for any purpose.

### 1994 Act

13. The 1994 Act required the TBI to maintain a confidential registry with basic information about people convicted of sex offenses: full name and aliases, date and place of birth, social security number, driver's license number, parole or probation officer contact information, offenses of conviction, current place of employment, current address, and any other information required by TBI regulation. 1994 Tenn. Pub. Acts, ch. 976, § 4. The information in the registry was expressly designated confidential and available only to law enforcement. *Id.* § 7(c).

14. People convicted of sex offenses had to register within ten days of release from probation, parole, or incarceration without supervision, report a change of residence within ten days, and report temporarily residing in a municipality or county within ten days. 1994 Tenn. Pub. Acts, ch. 976, § 4. After initial registration, the TBI was required to send a registrant a verification and monitoring form every ninety days, which the registrant had to complete within ten days of receipt. *Id.* § 5.

4

15.  The 1994 Act did not require in-person registration or reporting. Offenders only had to complete the required form and "cause such form to be delivered to TBI headquarters in Nashville." 1994 Tenn. Pub. Acts, ch. 976, §§ 4–5.

16.  Under the 1994 Act, offenders could petition a court for relief from the Act's requirements ten years after release from probation, parole, or incarceration without supervision. 1994 Tenn. Pub. Acts, ch. 976, § 8. The court was required to grant the petition if it found the registrant had complied with the Act, was rehabilitated, and did not pose a threat to public safety. *Id.* § 8(c). If the petition was granted, the TBI was required to expunge the registrant's data from its registry. *Id.*

17.  The 1994 Act applied to people convicted of sex offenses on or after January 1, 1995. The 1994 Act also applied retroactively to people whose convictions occurred before that date if they were still incarcerated or on probation or parole as of that date. 1994 Tenn. Pub. Acts, ch. 976, § 3(2). Thus, a person who completed his sentence before the effective date was not required to register.

18.  The Tennessee General Assembly repeatedly amended the 1994 Act to expand its scope:

   a.  **1996**:

      i.  People charged with sex offenses but placed on pre-trial and judicial diversion must register. 1996 Tenn. Pub. Acts, ch. 834, § 1.

   b.  **1997**:

      i.  People on pre-trial and judicial diversion must register even after completing diversion and having their judicial records expunged. 1997 Tenn. Pub. Acts, ch. 455, § 3. Registry information is made public for

5

offenses committed after July 1, 1997, and made accessible via the Internet and a toll-free telephone number. 1997 Tenn. Pub. Acts, ch. 461, § 2. People convicted of the non-sexual offenses of false imprisonment of a minor, kidnaping of a minor, aggravated kidnaping of a minor, and especially aggravated kidnaping of a minor must register as "sexual offenders." 1997 Tenn. Pub. Acts, ch. 466, § 1, codified at Tenn. Code Ann. § 40-39-102(3)(A)(xi)–(xiv) & (B)(xiii)–(xiv) (1997).

ii. The TBI is authorized to require offenders to provide a current photograph. *Id.* § 40-39-103(a)(10) & (b).

c. **2000**

i. A mandatory minimum 180-day sentence is imposed for any violation of registration requirements and is not subject to suspension, diversion, or probation. 2000 Tenn. Pub. Acts, ch. 882, § 1. Lifetime registration is required for people with more than one conviction for a sex offense or with a conviction for a "violent sexual offense," defined as actual or attempted aggravated rape, rape, aggravated sexual battery, or rape of a child. 2000 Tenn. Pub. Acts, ch. 997, § 1–2.

ii. Offenders must report within ten days of coming into a municipality or county in which they work or are students. 2000 Tenn. Pub. Acts, ch. 997, § 3.

d.    **2002**

   i.    Offenders must report within ten days of being employed or becoming a

student or volunteer at an institution of higher learning in the county or

municipality in which they reside, and the name and address of that

institution is added to registry and made public for offenders who

committed offenses after October 27, 2002. 2002 Tenn. Pub. Acts, ch.

469, §§ 3, 5, and 11.

19.   Although the General Assembly repeatedly expanded the scope of the 1994 Act, the law

fundamentally required only registration and periodic reporting and did not impose any

limits on where a registrant could live, work, or go.

**Repeal of the 1994 Act and Adoption of the Current Act**

20.   The 1994 Act was repealed and replaced with the current Act in 2004. 2004 Tenn. Pub.

Acts, ch. 921, codified at Tenn. Code Ann. §§ 40-39-201–40-39-211 (2004). The Act

dramatically expanded the scope and burden of the 1994 Act in several respects:

a.    Offenders were classified as "sexual offenders" or "violent sexual offenders,"

Tenn. Code Ann. § 40-39-202(9) (2004), with "violent sexual offenders" required

to register for life, *id.* § 40-39-207(g). The non-sexual offenses of false

imprisonment and kidnaping where the victim is a minor, as well as solicitation

of, conspiracy to commit, criminal responsibility for, facilitation of, and being an

accessory after the fact to those non-sexual offenses, are defined as "sexual

offenses" and "violent sexual offenses." *Id.* § 40-39202(16) & (24).

7

b. Reports had to be made in person. *Id.* §§ 40-39-203, 40-39-204. Reports were required after certain triggering events (*e.g.,* change of residence), had to be made within forty-eight hours of the event, and additional triggering events were specified (*e.g.,* change of job, re-incarceration for any offense). *Id.* §§ 40-39-203, 40-39-204(e). Offenders designated as "sexual offenders" had to report annually within seven days of their birth date to verify their registration information and update their finger prints, palm prints, and photographs. Offenders designated as "violent sexual offenders" had to report and provide the same information quarterly.

c. All offenders had to pay an annual administrative fee. *Id.* § 40-39-204(b)–(c).

d. Offenders had to disclose more information, including the contact information of their nearest living relative, whether any minors live with them, and information about any automobiles, mobile homes, or boats they lived in. *Id.* § 40-39-203(h).

e. Offenders not subject to lifetime registration could no longer petition a court for removal from the registry but had to apply to the TBI for removal from the registry. *Id.* § 40-39-207.

f. Any violation of registration requirements — including untimely registration, untimely reporting, failure to sign the registration form, failure to pay the administrative fee — was now a felony instead of a misdemeanor. *Id.* § 39-16-208.

21. Since that time, the Act has been repeatedly amended to expand its scope and the burdens imposed on offenders:

a. **2005**

    i.    Offenders must report any employment, not just employment of more than fourteen days; any place they reside more than five consecutive days as their "primary residence" and any place they reside more than fourteen days in a year as their "secondary residence." 2005 Tenn. Pub. Acts, ch. 316, § 1, codified at Tenn. Code Ann. §§ 40-39-202(4), (11) & (15) and 40-39-203(a) (2005). Offenders must report all automobiles, mobile homes, and boats. *Id.* § 40-39-203(i)(10).

    ii.    The annual administrative fee offenders must pay is increased from $60 to $100. *Id.* § 40-39-204(b)–(c).

b. **2006**

    i.    Offenders, "as defined in 40-39-202(16)", **whose victims were minors** are prohibited from living, obtaining sexual offender treatment, or working within 1,000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public. 2006 Tenn. Pub. Acts, ch. 890, § 20.

        (1)    The term "available for use by the general public" is not defined.

c. **2007**

    i.    Offenders must report within forty-eight hours of a "material change in employment or vocational status." 2007 Tenn. Pub. Acts, ch. 126, § 1, codified at Tenn. Code Ann. § 40-39-203(a)(3) (2007).

9

      ii.     All registrant information, regardless of the date of offense, is now public.

              2007 Tenn. Pub. Acts, ch. 531, § 1.

d.   **2008**

      i.      Offenders must report any change to their "electronic mail address

              information, any instant message, chat, or other Internet communication

              name or identity information that the person uses or intends to use," which

              information is now included on their publicly available registration. 2008

              Tenn. Pub. Acts, ch. 979, § 1. The TBI is authorized to share this

              information with businesses that offer "electronic communications or

              remote computing services" for "prescreening users" in exchange for the

              businesses notifying the TBI if a registrant is using their system. *Id.*

      ii.     Offenders **whose victims were minors** are prohibited from dressing as a

              "real or fictional person or character" or "member of a profession,

              vocation, or occupation while in the presence of a minor, or with the intent

              to attract or entice a minor to be in the presence of the offender". 2008

              Tenn. Pub. Acts, ch. 1164, § 13.

      iii.    Offenders **whose victims were minors** may not engage in any

              employment that causes them to be in direct and unsupervised contact with

              a minor, nor may they operate an ice cream truck or an "emergency

              vehicle" for the purpose of "attracting or enticing a minor to be in the

              presence of the offender." *Id.*

e. **2009**

   i. All offenders (**not just offenders whose victims were minors**) are forbidden to be on the premises of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public if they have reason to believe children are present. 2009 Tenn. Pub. Acts, ch. 597, § 1, effective July 1, 2009.

   ii. All offenders are forbidden to stand or "sit idly" within 1,000 feet of those locations when children are present unless they have custody or responsibility for a child there or another "specific or legitimate reason for being there." *Id.*

      (1) The terms standing or sitting "idly" is not defined.

      (2) The term "specific or legitimate reason" is not defined.

f. **2010** (all changes hereinafter became effective *after* the date of Plaintiff's offense)

   i. Made various changes to definitions section. Mandates the TBI registration form require the offender's complete name and all aliases, including, but not limited to, any names that the offender may have had or currently has by reason of marriage or otherwise, including pseudonyms and ethnic or tribal names and makes this information public. Also requires copies of all passports and immigration documents and professional licensing information that authorizes an offender to engage in an occupation or carry out a trade or business. 2010 Tenn. Pub. Acts, ch. 1138, **effective July 1, 2010.**

11

ii. Offenders must maintain a valid driver's license or photo identification card labeling them as "sexual offenders" or "violent sexual offenders" and must always have it in their possession. *Id.*, § 13.

(1) Currently, driver licenses are annotated with "88 T.C.A. 40-39-201 et seq" which is a Department of Safety code alerting law enforcement that the holder is registered as a sex offender.

iii. No more than two offenders may live in the same residence. 2010 Tenn. Pub. Acts, ch. 1145, § 1.

iv. Offenders must receive written permission from a school's principal in order to attend a conference with school, day care, child care, play, playground or recreation center as a parent of a child who is enrolled. Offenders are also required to give written notice of their SOR status to the principal in order for the person to drop off or pick up the person's own child on school grounds. 2010 Tenn. Pub. Acts, ch. 750.

g. **2011**

i. Offenders must report twenty-one days before traveling out of the country or, with the designated law enforcement agency's prior written approval, twenty-four hours before traveling. 2011 Tenn. Pub. Acts, ch. 266, § 1.

ii. Public library directors are authorized to "reasonably restrict" or "total[ly] ban" offenders from library premises under threat of prosecution, in the sole discretion of the library director, for criminal trespass. 2011 Tenn. Pub. Acts, ch. 287, § 1.

12

(1)      The term "reasonably restrict" is not defined.

h.    **2014**

    i.    <u>All offenders whose victims were minors or adults</u> (**not just offenders whose victims were minors**) are prohibited from living or working within 1,000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public. 2014 Tenn. Pub. Acts, ch. 992, § 1.

    ii.    Local governments are authorized to establish "community notification systems" to notify residents, schools, and childcare facilities when an offender resides within a certain distance of those locations and to charge a fifty dollar fee to offenders to pay for the system. 2014 Tenn. Pub. Acts, ch. 751, § 1. Authorized forms of notice include a "community notification flyer" delivered to all legal residences within a specified area and publication by newspaper or internet. *Id.*

i.    **2015**

    i.    Offenders are prohibited from being "alone" with a minor in a "private area." Tenn. Pub. Acts, ch. 516, § 1. An offender is "alone" with a minor if there are no other adults present, or if there are other adults present but they are "asleep, unconscious, or otherwise unable to observe" the offender and the minor, "unable or unwilling to come to the aid of the minor" if necessary, or are themselves offenders. *Id.*

13

ii.  Offenders must report e-mail, social media, and instant message accounts, "other Internet communication platforms or devices," and usernames, screen names, or other methods used to access those accounts or web sites. *Id.*, § 7.

(1)  The terms "social media", "instant message accounts", "other Internet communication platforms or devices", "usernames" and "screen names" are not defined.

22.  In sum, Tennessee's sex offender registry law began as a private law enforcement database in 1995 but has changed radically in the last twenty-one years. In its present form, the Act, subjects offenders to obligations, restraints, disabilities, and punishment of a different character and a greater order of magnitude than those imposed by the Act in its original form.

23.  Since its first inception in 1994, Tennessee's Sex Offender Registration Act has done nothing whatsoever to effectively prevent the commission of sex offenses, including by way of deterrence.

24.  The Tennessee SOR limits its provisions by reference to the terms "the offender" or "an offender" or "sexual offender".

25.  The Tennessee SOR defines an "offender" as a "sexual offender ... unless otherwise designated." T.C.A. 40-39-202(9).

26.  The Tennessee SOR defines a "sexual offender" as "a person who has been convicted in this state of committing a sexual offense or has another qualifying conviction". T.C.A. 40-39-202(19).

14

27.    The Tennessee SOR defines "sexual offense" as one of several "act[s] that, on or after November 1, 1989, constitutes the criminal offense of" one of twenty-four (24) different and specific listed criminal offenses under the Tennessee Penal Code, Tennessee Code Annotated Chapter 39. T.C.A. 40-39-202(20).

    a.    **None** of the listed offenses are for the federal offense of <u>obstruction of justice</u>, the offense for which Plaintiff Roath was convicted in a federal court.

28.    The Tennessee SOR does not define "qualifying conviction" but does define "conviction" as "a judgment entered by a **Tennessee court** ... . 'Conviction' includes, but is not limited to, a conviction by a federal court or military tribunal, including a court-martial conducted by the armed forces of the United States, and a conviction, ... in any other state of the United States, other jurisdiction or other country. A conviction, ... for an offense committed in another jurisdiction **that would be classified as a sexual offense or a violent sexual offense if committed in this state shall be considered a conviction for the purposes of this part**. ..."

29.    Plaintiff's federal offense of obstruction of justice under 18 U.S.C. 1591(d) was and is not a "judgment entered by a Tennessee court".

30.    The federal offense of obstruction of justice under 18 U.S.C. 1591(d) is not an offense "that would be classified as a sexual offense ... if committed in" the State of Tennessee or under Tennessee law.

31.    Therefore, the federal offense of obstruction of justice under 18 U.S.C. 1591(d) is NOT an "offense" or a "sexual offense" under Tennessee law and Plaintiff Roath is not an "offender" as defined under Tennessee SOR. Accordingly, any provisions that are limited

15

by their own terms to an "offender" or a "sexual offender" or a "sexual offender, as defined in §40-39-202" do not apply to Plaintiff Roath.

32.     The Tennessee SOR also differs substantially from requirements under federal law, which only requires registration and notification but does not otherwise restrict employment, residence, or other activities. For example:

a.      **Tennessee law.** T.C.A. 40-39-207 states that "an offender required to register under this part" must stay on the registry for at least 10 years *after* termination of active supervision, parole, or any other alternative to incarceration and may not apply for removal any sooner than 10 years after discharge of incarceration without supervision.

b.      **Federal law.** 42 U.S.C. 16915 states that a registrant may be removed from the registry after 10 years, *including* any periods of supervised release. Federal law also starts counting the period of registration even if registration occurs *during* incarceration. See, 42 U.S.C. 16913(b)(1).

c.      **Tennessee law**. T.C.A. 40-39-203(i) requires TBI registration forms to require offenders to sign and disclose the following information under penalty of perjury;

i.      Date and place of birth;

ii.     Social Security number

iii.    Photocopy of driver license;

iv.     Date, county and state of each sexual offense conviction;

v.      Name of any current employers and length of employment, including physical address and phone numbers;

16

vi.     Mailing address;

vii.    Any vehicle, mobile home, trailer or manufactured home used or owned by an offender, including descriptions, vehicle information numbers and license tag numbers;

viii.   Any vessel, live-aboard vessel or houseboat used by an offender, including the name of the vessel, description and all identifying numbers;

ix.     Name and address of each institution of higher education in this state where the offender is employed or practices a vocation or is a student;

x.      Race and gender;

xi.     Name, address and phone number of offender's closest living relative;

xii.    Whether victims of the offender's convictions are minors or adults, the number of victims and the correct age of the victim or victims and of the offender at the time of the offense or offenses, if the ages are known;

xiii.   A complete listing of the offender's electronic mail address information or any instant message, chat or other Internet communication name or identity that the person uses or intends to use;

xiv.    Whether any minors reside in the primary or secondary residence;

xv.     Any other registration, verification and tracking information, including fingerprints and a current photograph of the offender, vehicles and vessels, as referred to in subdivisions (i)(10) and (i)(11), as may be required by rules promulgated by the TBI. The TBI "Registration/Verification/Tracking Form" promulgated by the TBI

17

(Exhibit 1) requires even more information, including the requirement that a registrant sign a statement saying that he "understand(s) the requirements" of the law.

d. **Federal law.** By contrast, federal law, under which Plaintiff is required to register, 42 U.S.C. §16914, only requires the following;

i. The name of the sex offender (including any alias used by the individual);

ii. The Social Security number of the sex offender;

iii. The address of each residence at which the sex offender resides or will reside;

iv. The name and address of any place where the sex offender is an employee or will be an employee;

v. The name and address of any place where the sex offender is a student or will be a student;

vi. The license plate number and a description of any vehicle owned or operated by the sex offender;

(1) The term "operated by" is not defined.

vii. Any other information required by the Attorney General.

(1) The United States Attorney General has not promulgated any "other information" required to be reported.

e. **Tennessee law.** T.C.A. 40-39-203(a)(4) requires an "offender" to "report" any changes of information required by the TBI form within 48 hours.

18

i.    "Within forty-eight (48) hours" means "a continuous forty-eight-hour

      period, not including Saturdays, Sundays or federal or state holidays."

      T.C.A. 40-39-202(32).

ii.   To "report" "means appearance before the proper designated law

      enforcement agency." T.C.A. 40-39-202(16).

iii.  An "agency" is defined as sheriff's office, municipal police department,

      metropolitan police department, campus law enforcement agency, the

      Tennessee department of correction, a private contractor with the

      Tennessee department of correction or the board." T.C.A. 40-39-202(14).

iv.   Det. Clark, the Franklin Police Department Detective in charge of

      maintaining the SOR within the city limits of Franklin, Tennessee,

      demands that Mr. Roath report "in person" <u>only to her specifically</u>.

      (1)    If she is not there, Mr. Roath is instructed to make an appointment

             to see <u>her and only her</u>.

      (2)    Mr. Roath is not allowed to mail in an updated and signed TBI

             form nor to even personally drop one off at the front desk in person

             nor to hand-deliver it to anyone else at the police department.

      (3)    According to Det. Clark, an "in-person" report includes the

             requirement that a registrant go into a closed room with her alone

             and submit himself to her questioning.

      (4)    The registrant, pursuant to City of Franklin policy, is not allowed

             to have his or her attorney present during the questioning and if he

19

refuses to enter the interrogation room, he will be noted as failing

to report and be subjected to arrest and felony prosecution.

f. **Tennessee law.** T.C.A. 40-39-203(a)(7) requires "an offender" to report any

change of email or other internet communications information within "three (3)

days, excluding holidays".

    i. The terms "holidays" and "days" are not defined and may or may not

       include federal, state or local holidays and may or may not include

       weekends.

    ii. The term "internet communication" is not defined.

g. **Federal law.** 42 U.S.C. 16913(c), in contrast, requires a registrant to report each

change of only his "name, residence, employment, or student status" in person to

inform "that jurisdiction" (meaning the State of Tennessee per 42 U.S.C.

16911(10)(A)) within no later than "three business days".

    i. "Business days" is not defined and may or may not exclude non-federal

       holidays and weekends.

    ii. The term "in person" is not defined.

h. **Tennessee law.** Tennessee SOR defines residency by differentiating between

"primary residence" and "secondary residence".

    i. Primary residence is defined as "a place where the person abides, lodges,

       resides or establishes any other living accommodations in this state for

       five (5) consecutive days. T.C.A. 40-39-202(12).

      ii.      Secondary residence is defined as "a place where the person abides, lodges, resides or establishes any other living accommodations in this state for a period of fourteen (14) or more days in the aggregate during any calendar year and that is not the person's primary residence". T.C.A. 40-39-202(18).

i.    **Federal law.** Federal law, in contrast, defines "resides" as "the location of the individual's home or other place where the individual habitually lives." 42 U.S.C. 16911(13).

      i.      The term "habitually lives" is not defined.

      ii.      Federal law does not define a "secondary residence".

j.    **Tennessee law.** Tennessee SOR requires annual in-person registration within 7 days of the person's birthday to the "designated law enforcement agency" to update fingerprints, palm prints, and photograph, and to verify the continued accuracy of the information transmitted to the TBI. T.C.A. 40-39-204(c).

      i.      Det. Clark, under direction of Jeanne Broadwell of the TBI, interprets this to mean the person needs to report to her and her only and "verify" information by submitting to questions.

k.    **Federal law.** Federal law requires an annual in-person appearance to the "jurisdiction" (meaning the State of Tennessee) without regard to the person's birthday. 42 U.S.C. 16916(1).

l.      **Tennessee law.** The Tennessee SOR places residency and employment restrictions on "sexual offender[s] ... as defined in §40-39-202". T.C.A. 40-39-211.

i.      No "sexual offender, as defined in §40-39-202 ... **whose victim was a minor**, shall knowingly establish a primary or secondary residence or any other living accommodation ... or knowingly accept employment within one thousand feet (1,000') of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public." T.C.A. 40-39-211(a)(1) (emphasis added).

(1)     However, no person subject to this provision has ready access to the property lines to all these different restricted areas and no "agency" gives this information to any affected individuals. Thus, it is impossible for individuals who may or may not be subject to this provision to ensure they are in compliance and risk arrest if they happen to estimate the property line or distance incorrectly.

(2)     While the law seems to define up to where the measurement must be made, it does not define from where the measurement must start. In other words, does the measurement start from the residence property line, the center point, the front door, etc. Nor does the law define whether the measurement is straight-line or as

driven on a public road. An incorrect or erroneous measurement may subject a person to arrest or eviction.

(3)     There is no provision in the law or on the TBI Sexual Offender Website or on the TBI reporting form to indicate that there was no victim in the stated offense, minor or adult.

(4)     The term "victim" is not defined in the Tennessee SORNA. However, T.C.A. 40-38-203 defines a "victim" as an "individual who suffers direct or threatened physical, emotional or financial harm as the result of the commission of a crime or an immediate family member of a minor victim or a homicide victim."

(5)     Plaintiff Roath was convicted of obstruction of justice under federal law which has no identifiable human victim as defined under Title 40 of the Tennessee Code.

(6)     Mr. Roath's reporting form leaves the identity of the "victim" blank, leaving police officers to think the victim was a minor and just inadvertently omitted from the form, subjecting Mr. Roath to possible erroneous arrest. Mr. Roath's information published on the Tennessee Sexual Offender Registry website, run by the Tennessee Bureau of Investigation, notes Mr. Roath's offense as "Conspiracy to Obstruct Enforcement of Sex Trafficking of Minor Children", without any distinguishing factors, including that no actual victim was involved in the offense of conviction, and would leave a police

23

officer with the impression that there was a victim and that the victim was a minor.

(7)     Det. Clark was asked to correct this misinformation on June 1, including that the victim section should say "none". On June 5, 2017, Det. Clark emailed counsel for Plaintiff and merely said "[t]he corrections have been made" but did not provide a copy of the corrected form.

(8)     On or about December 2, 2014, Counsel for Mr. Roath, Jerry Gonzalez, met with Jeanne Broadwell, General Counsel for the Tennessee Bureau of Investigation, who conceded that there was no identifiable victim to the offense of conviction and that there was no place to include that information on the TBI computers. She also conceded that any police officer may be confused and assume that there was a minor victim and arrest the plaintiff for residing within the restricted zone. To date, no corrective measures have been taken to address this problem.

(9)     On December 4, 2014, Jeanne Broadwell was emailed with details of errors on the TBI Instruction Form that was handed out to those on the registry. Specifically:

(a)     Page 2. "Registering and Reporting Requirements for Offenders". The annual period for reporting should be seven "calendar" days, not just 7 days.

24

(b)     The administrative fee is "if financially able" and should so reflect. See T.C.A. 40-39-208(a)(5).

(c)     Paragraphs should cite to the applicable section of TCA for verification.

(d)     The form fails to define "primary or secondary residence".

(e)     The reference to and discussion of 40-39-211(a) fails to state that the section applies to those defined as a sexual offender "in 40-39-202" and fails to denote that the section is limited to those cases where the "victim was a minor" or where the "victim was an adult". Curiously, the reference to 40-39-202 is included in the next section dealing with 40-39-211(d).

(f)     The reference to and discussion of 40-39-211(d)(l) fails to state that the section applies to those defined as a sexual offender "in 40-39-202".

(g)     The section mandating that an offender sign the instruction form (as opposed to the Information Sheet) is not consistent with state law which requires no such acknowledgment of an "Information Form", especially of a form that is in error.

(h)     The section stating that failure to comply can subject a person to prosecution under federal law (citing 18 U.S.C. 2250) fails to note that such prosecution can only be

25

brought if the person "knowingly" fails to register or update information and only if the person is required to register under federal law or required to register under state law AND travels in interstate commerce. It also fails to note that prosecution under 2250 is only for failing to update information that is required under [federal] SORNA. So failing to update information NOT required by [federal] SORNA but required under State law would not be subject to prosecution under § 2250 BUT may be prosecuted under applicable state law.

(10)     To date, the TBI Information Form still contains these same errors and misstatements of the law.

ii.     No "sexual offender, as defined in §40-39-202 ... whose victim was an adult, shall knowingly establish a primary or secondary residence or any other living accommodation or knowingly accept employment within one thousand feet (1,000') of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public." T.C.A. 40-39-211(a)(2).

iii.     No "sexual offender, as defined in § 40-39-202, ... whose victim was a minor, shall knowingly reside with a minor. Notwithstanding this

26

subsection (c), the offender may reside or be alone with a minor if the offender is the parent of the minor, ... . " T.C.A. 40-39-211(c).

(1)     This provision has caused quite a bit of confusion among law enforcement individuals and Mr. Roath has received conflicting information with arbitrary justifications:

    (a)     On or about November, 2014, while under Supervised Release supervision by U.S. Probation Officer Donna Jackson in Nashville, Tennessee after his initial release from federal prison, Mr. Roath was told he could not live at his mother's house in Greenbrier, Tennessee, because Mr. Roath's sister and her minor child also were living at that residence. Mr. Roath was told that this restriction was based on the Probation Officer's understanding of T.C.A. 40-39-211(c), an understanding she obtained from a "friend" of hers at the Metro-Nashville police department.

    (b)     As a result, Mr. Roath had to live out of his car for a period of time.

    (c)     By contrast, Det. James Kendrick of the Robertson County Sheriff's department told Mr. Roath, while he was living in Robertson County, that he had no problem with Roath living in the same house as his sister's minor child.

(d)     On June 28, 2012, then General Counsel for the TBI, Pam Beck, advised that Mr. Roath could live with his nephew who was a minor and so advised U.S. Probation Officer Donna Jackson.

(e)     When similar questions of interpretation and application were posed to Det. Clark, she would become exasperated and claim that all Mr. Roath had to do was call her with such questions. When asked what would happen if she said something was ok and the event was in another county, Det. Clark offered to send her opinions by email so Roath could show it to other law enforcement. When asked about what if that law enforcement officer did not accept her email opinion, Det. Clark became irate. In effect, Det. Clark expects Mr. Roath to treat her like his probation or parole officer.

iv.    No "sexual offender, as defined in § 40-39-202, ... shall knowingly (A) Be upon or remain on the premises of any building or grounds of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when the offender has reason to believe children under eighteen (18) years of age are present; (B) Stand, sit idly, whether or not the offender is in a vehicle, or remain

28

within one thousand feet (1,000') of the property line of any building

owned or operated by any public school, private or parochial school,

licensed day care center, other child care facility, public park, playground,

recreation center or public athletic field available for use by the general

public in this state when children under eighteen (18) years of age are

present, while not having a reason or relationship involving custody of or

responsibility for a child or any other specific or legitimate reason for

being there; or (C) Be in any conveyance owned, leased or contracted by a

school, licensed day care center, other child care facility or recreation

center to transport students to or from school, day care, child care, or a

recreation center or any related activity thereof when children under

eighteen (18) years of age are present in the conveyance. T.C.A. 40-39-

211.

      (1)     "[s]pecific or legitimate reason" is not defined.

m.    **Federal law.** Federal law does not have any residency, employment or other

restrictions.

n.    **Tennessee law.** An "offender" shall report to the designated law enforcement

agency at least twenty-one (21) days before traveling out of the country; provided,

that offenders who travel out of the country frequently for work or other legitimate

purpose, with the written approval of the designated law enforcement agency, and

offenders who travel out of the country for emergency situations shall report to the

29

designated law enforcement agency at least twenty-four (24) hours before

traveling out of the country. T.C.A. 40-39-204(h).

    i.      The terms "frequently", "legitimate purpose", and "emergency" are not

            defined.

    ii.      In addition, this provision restricts out-of-country travel to that which the

            "offender" knows will occur no sooner than 21 days hence unless it is an

            emergency. It also does not provide any mechanism by which a person can

            appeal any disapproval of travel by the "designated law enforcement

            agency" and leaves it entirely within that agency's arbitrary discretion to

            approve or disapprove such travel or to decide what constitutes frequent,

            legitimate, or emergency situations.

o.    **Federal law.** An offender must provide the following travel information for

    inclusion in the registry:

    i.      "Information relating to intended travel of the sex offender outside the

            United States, including any anticipated dates and places of departure,

            arrival, or return, carrier and flight numbers for air travel, destination

            country and address or other contact information therein, means and

            purpose of travel, and any other itinerary or other travel-related

            information required by the Attorney General."

        (1)    The federal act does not say what to do if such information is not

                available.

ii.   Federal law does not require permission from any government official for the travel nor does it require the travel to be for a "legitimate purpose" or "frequent" and does not otherwise restrict travel.

p.   **Tennessee law.** "Persons who have been convicted of the following offenses shall not have the right to legally change their names: (B) Any offense, the commission of which requires a sexual offender to register pursuant to the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004, compiled in title 40, chapter 39, part 2." T.C.A. 29-8-101(b)(1).

q.   **Federal law.** There is no restriction on changing one's name.

33.   Plaintiff Roath is currently registered on the TSOR through the City of Franklin because he resides within the city limits.

34.   Defendant Clark is the officer at the Franklin Police Department who takes information that is submitted to the TBI for the Sex Offender Registry.

35.   On August 25, 2016, the Sixth Circuit Court of Appeals issued its published decision in the case of *Does v Snyder*, 834 F.3d 696 (6th Cir. 2016). In *Does*, the Sixth Circuit held that various aspects of Michigan's SORNA were unconstitutional under the ex-post facto clause of the U.S. Constitution.

a.   Michigan's SORNA is practically identical in relevant respects to Tennessee's SORNA:

i.   Like Michigan (Mich. Pub. Act. 85 §§ 5a(4), 8(2), 10(2)(3) (1999)), Tennessee requires frequent in-person reporting on short notice (48 hours). See T.C.A. § 40-39-203(a)(4), §40-39-204(b)(1) (2016);

31

ii.   Like Michigan (Mich. Pub. Acts 121, 127 (2005)), Tennessee prohibits offenders from living, working or being idle within 1,000 feet of any "public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public ["Exclusion Zones"]." T.C.A. § 40-39-211(a)(1) (2016);

iii.   Like Michigan (Mich. Comp. Laws § 28.729), Tennessee imposes severe criminal penalties for any violations of the law. Any violation of the Act's requirements is a Class E felony, T.C.A. § 40-39-208(b) (2016), which carries a minimum sentence of one year and a maximum sentence of six years, *id*. § 40-35-111(a)(5).

36.   42 U.S.C. 16913(b) states that an offender "shall initially register — (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement".

37.   42 U.S.C. 16913(d) states that "The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its **implementation in a particular jurisdiction**, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b)." (Emphasis added).

38.   However, this was an unconstitutional abdication of an essential legislative function to the executive branch in violation of Separation of Powers. See *Panama Refining Co. v Ryan*, 293 U.S. 388, 421 (1935).

32

39.    At the time of Plaintiff's conviction in 2010, he would have been unable to comply with

42 U.S.C. 16913(b) because Tennessee had not yet fully or substantially implemented the

requirements of the chapter with regards to its Sex Offender Registry.

40.    In January, 1999, the U.S. Attorney General issued guidance regarding the "Duration of

Registration". He wrote, the "requirement of registration for at least 10 years, like the

other requirements of the Act, does not have to be applied retroactively to offenders who

were convicted prior to the establishment of a conforming registration program. Hence, it

is a matter of state discretion whether to allow termination of registration for such

offenders after some shorter period of time." 64 Fed. Reg. 573. Thus, federal law, under

which Plaintiff is required to register, does not require registration for any particular

minimum length of time.

41.    In or about December, 2010, **after the date of offense for which Plaintiff was

convicted**, the U.S. Attorney General issued a ruling that the federal SORNA applied to

all offenders even for those convicted prior to the enactment of the Act or implementation

by a state. See 28 C.F.R. 72.3.

42.    Tennessee's "registration program" did not come into compliance and was not effectively

implemented until September, 2011 when the Office of Sex Offender, Monitoring,

Apprehending, Registering, and Tracking (SMART office) within the Department of

Justice issued an opinion that Tennessee's SOR was in "substantial compliance" with

federal requirements.

43.    On or about July, 2013, Pam Beck, at the time General Counsel for the TBI, stated that in

her opinion Mr. Roath did not need to register as a sex offender under Tennessee law.

33

44.     On August 6, 2013, Jeanne Broadwell, the new General Counsel for the TBI, stated in an

        email that "at the time of Mr. Roath's plea in 2010 neither of his convictions required

        state registration."

45.     On December 2, 2014, Counsel for Plaintiff met with General Counsel Jeanne Broadwell

        to discuss the various restrictions under Tennessee law and whether they applied to Mr.

        Roath. Several other people were in attendance, including Assistant U.S. Attorney Carrie

        Daughtrey. At that meeting, Jeanne Broadwell conceded that T.C.A. 40-39-211(a)(1) and

        (a)(2) did not apply to Mr. Roath because each of those required a human victim as a

        prerequisite.

        a.      This is completely contradictory to the opinion of Det. Clark who advised Mr.

                Roath that these provisions *did* apply to him, regardless of her knowledge that no

                human victim was involved in his offense of conviction.

46.     On August 26, 2016, the *Does v Snyder* case was emailed in pdf format to Jeanne

        Broadwell, General Counsel for the TBI, manager of the Tennessee Sex Offender

        Registry, and legal advisor for the various local law enforcement agencies. In that email,

        counsel for Plaintiff said:

        a.      "With regards to my client, Quinton Roath, who will be leaving the halfway house

                in Nashville next month to re-establish his residency either in Robertson or

                Cheatham counties, those deputy sheriffs charged with supervising sex offender

                offenders should be advised that any changes to the law that were implemented

                after the date of his conviction in 2010 are not applicable to him. Should they

                impose any restrictions on Mr. Roath that were not implemented until after that

34

date, they will find themselves liable under 42 U.S.C. 1983 and will not be
protected under qualified immunity for any acts taken under color of law as of
yesterday, the date the new opinion was issued."

      b.      The ex post facto clause actually applies as of the date of offense, not conviction.

47.    Also on August 26, 2016, a copy of the *Does* opinion was also emailed to Det. Kendrick
of the Robertson County Sheriff's Office, the county where Mr. Roath was going to reside
and where Mr. Roath's "secondary residence" is currently located.

48.    Again, on May 31, 2017, Jeanne Broadwell was emailed by counsel reminding her of the
*Does v Snyder* decision and asking her if she had "advised Det. Clark accordingly?"

49.    On May 31, 2017, Jeanne Broadwell responded that she was familiar with *Does v Snyder*
and that there was a similar lawsuit pending regarding Tennessee's registry law. Asserting
that there were "differences between Michigan's law and ours", Jeanne Broadwell
concluded that since "the Sixth Circuit has not ruled on the Tennessee suit yet our law
stands, at least for now."

50.    On September 20, 2016, Counsel for Plaintiff emailed Det. Clark to inform her of the
details of Mr. Roath's federal conviction of obstruction of justice, including the fact that
the offense of conviction had no actual victim and that obstruction of justice is not a
listed conviction under the definition of "sexual offender" in the Tennessee Code. The
message also included Plaintiff's position that any ex-post facto substantive changes
could not be enforced against him and that any conflicts between Tennessee law and
federal law should be construed in favor of federal law because it is federal law under
which Mr. Roath was required to register. The message included the following questions

for the purpose of clarification and so that Mr. Roath could properly be advised of what was expected of him:

a.　Is Mr. Roath required to provide the information set out in T.C.A. 40-39-203 where federal registry law does not require it?

b.　Are the restrictions of T.C.A. 40-39-204 applicable to Mr. Roath, including the need for "written approval of the designated law enforcement agency" for travel out of the country?

c.　If Mr. Roath is required by you to comply with those provision of the TN Sorna that are in conflict with federal law, were passed after the date of his conviction in 2010, or should not apply to him because he is not a "sexual offender" as defined under Tennessee law and he fails to comply, is he subject to tolling of his required time on the registry as set out in T.C.A. 40-39-207?

d.　Is the provision in T.C.A. 40-39-208 making it an offense to "timely register or report" based on the time requirements of Tennessee law or federal law (the two are different)?

e.　Do the residence restrictions of T.C.A. 40-39-211(a) apply to Mr. Roath given that his act of conviction did not include any human "victims" nor a victim who was an adult and that section was added after the date of his conviction?

f.　Do the residence restrictions of T.C.A. 40-39-211(b) apply to Mr. Roath given that his act of conviction did not include any human "victims"?

g.　Do the residence restrictions of T.C.A. 40-39-211(c) apply to Mr. Roath given that his act of conviction did not include any "victim [who] was a minor"?

36

h.      Do the residence restrictions of T.C.A. 40-39-211(d) apply to Mr. Roath given that his act of conviction is not included in the definition of "sexual offender" or "conviction" under T.C.A. 40-39-202?

i.      Do the restrictions of T.C.A. 40-39-211(k) ("alone with") apply to Mr. Roath given that his act of conviction did not include any human "victims" and that this provision was added after the date of his conviction?

j.      Does the identification requirement of T.C.A. 40-39-213 apply to Mr. Roath given that he is not "required to register pursuant to this part" but instead only required to register pursuant to federal law?

k.      Do the restrictions of T.C.A. 40-39-215 apply to Mr. Roath given that they are only applicable to someone "mandated to comply with the requirements of this chapter" and limited to a "sexual offender" as defined in "40-39-202" and limited to persons whose victims were minors when he is not a sexual offender as defined in 40-39-202 and his act of conviction had no victim?

l.      Do the restrictions of T.C.A. 40-39-216 apply to Mr. Roath given that this section was added after the date of his conviction?

51.    On September 27, 2016, counsel emailed Det. Clark again because she had not responded, saying "I would really appreciate hearing from you about what you are going to expect of my client so that I may properly advise him. Thank you."

52.    On September 28, 2016, Det. Clark emailed counsel and responded as follows:

a.      "Attached is the rules and regulations that are distributed to each offender on the registry. Sex offenders are classified as either violent or non-violent offenders.

Non-violent offenders register once a year where violent offenders register (4) times a year. Registry rules are only dependent on the category of classification not on the crime itself. Quintin [sic] does have a unique charge however **the rules of the registry still apply based on him being on the registry**. Please review these rules that are attached. The Tennessee Bureau of Investigation also has an informative website that will also assist you." (Emphasis added.).

b. The email from Det. Clark had a pdf file attached called "Instruction Form" and is attached to this complaint as **Exhibit 1**. The "Instruction Form" contained erroneous citations to the Tennessee Code. This form also contained instructions that were not authorized by the Tennessee Code, including

    i. the requirement of an "administrative fee" without exception. T.C.A. 40-39-208(a)(5) makes it a violation to not pay the fee only if the person is "financially able" to pay;

    ii. the requirement that the form needed to be reviewed with "the offender", presumably that the offender was compelled to sit there and listen to the review, and that the offender "must sign the form that the program requirements have been explained and that the offender understands the requirements and sanctions resulting from failure to comply with the program."

c. The "Instruction Form" also contained a misstatement of federal law.

d. The errors in the Instruction Form had previously been pointed out to Jeanne Broadwell, General Counsel for the TBI. On December 4, 2014, Ms. Broadwell

38

was emailed with details of several errors. But no corrections to the form have ever been made.

53. On September 28, 2016, counsel emailed Det. Clark and said that the questions posed had not been answered and that Mr. Roath had a right to know what parts of the law she expected him to comply with "especially the parts of the law that were implemented *after* the date of his conviction as well as the parts which have a condition precedent of a certain type of 'victim' where his charge of conviction had no victim." (Emphasis in original.)

54. On September 28, 2016, Det. Clark replied that "[a]s a registered sex offender **Mr. Roath is expected to abide by all requirements of the Tennessee Sex offender registry**. Any additional questions should be directed to the Tennessee Bureau of Investigations. Here is the link to the Tennessee Bureau of Investigation https://www.tn.gov/tbi/topic/sex-offender-registry-law. Once the link is opened there is a phone number to Tennessee Bureau of Investigation." (Emphasis added.)

55. On September 28, 2016, counsel emailed Jeanne Broadwell, General Counsel for the Tennessee Bureau of Investigation who manages the Sex Offender Registry and regularly advises local agencies about the law. "Jeanne, Can you answer the questions I posed to Det. Clark below so that I may advise Mr. Roath of what is expected of him and what his options are? I believe he has a right to know what laws will be applied to him under threat of arrest. Thanks."

56. On September 29, 2016, Jeanne Broadwell replied, "Mr. Gonzalez, Your questions should be directed to the appropriate District Attorney General's Office rather than the

39

TBI. The TBI does not make decisions regarding prosecutions of registered offenders for violations of the registry laws."

57.    On October 5, 2016, Det. Clark notified Mr. Roath that she would be performing a home inspection within 10 minutes. When Mr. Roath notified his counsel of this, Counsel emailed Det. Clark asking under what authority she was doing this home inspection and that Mr. Roath considered it harassment. Det. Clark never responded.

58.    On October 5, 2016, Det. Clark appeared at the residence of Mr. Roath with another unidentified, armed, male police officer with a threatening and stern look on his face who never identified himself. When Mr. Roath answered the door, Det. Clark proceeded to question Mr. Roath about his finding employment.

59.    On or about October 28, 2016, Det. Clark again made an unannounced appearance to Mr. Roath's residence. Det. Clark told Mr. Roath that "every year around this time we go around and we do make sure everybody knows the rules, who's on the list, so we came by to give you a copy of the rules."

a.    Around this time was around the holiday of Halloween.

b.    It is a common myth that all persons on the Sexual Offender Registry are pedophiles lying in wait and looking to entice little children into their homes with candy during this holiday. On the contrary, studies have shown this to be a complete urban myth. See, Chaffin et al. "How Safe are Trick-or-Treaters? An Analysis of Child Sex Crime Rates on Halloween." Journal of Sexual Abuse 3:21 (Sept. 2009).

40

60.   Mr. Roath expects to be harassed in front of his family and at his residence every year during the Halloween holiday.

61.   On or about December 29, 2016, Det. Clark informed Mr. Roath that he had until January 1, 2017 to make the $150 administrative fee payment and that he would be arrested if he failed to pay it.

62.   On December 29, 2016, counsel emailed Det. Clark to remind her that the law only required the payment if the person was financially able to make it and that Mr. Roath remained unemployed and did not have the funds. The email specifically stated "If you have any information that leads you to believe that he is financially able or if you believe that this statute does not apply to him for some reason, please let me know so that I can explain it to him. A response would be appreciated. Thank you."

63.   On January 1, 2017, a conference call was held between Det. Clark, Mr. Roath, and counsel. During that call, with regards to the annual administrative fee and the procedure for Mr. Roath to show that he is not "financially able" to pay it, Det. Clark became indignant and said that questions needed to be directed to "the TBI". Her "only job", she said, was to "report that this has not been paid. ... These are all their rules [meaning the TBI] so I don't know why I would have to tell you their rules but I can attempt to contact them and see if they give me a response." To date, no procedure or policy with regards to the inability to pay the annual fee has been received by Mr. Roath.

64.   Det. Clark also advised that with regard to any question about whether Tennessee SOR would allow Mr. Roath to, for example, attend his child's soccer game, that she would contact TBI for the answer and then report back to Mr. Roath about what they said.

41

65. Det. Clark also reiterated that she "stands by" her earlier position that all requirements of the Tennessee SOR apply to Mr. Roath despite the fact that he is not defined as an "offender" under state law unless "TBI tells me otherwise" because that is who she "reports to".

66. When asked what restrictions apply to Mr. Roath considering the fact that his offense of conviction did not involve a "victim", either minor or adult, Det. Clark said she could not make that decision because "TBI, once again, sets the parameters."

67. On January 2, 2017, Det. Clark emailed back and said "Quintin [sic] can give me a call to discuss the annual administrative costs at 615-550-6829." Det. Clark refused to answer counsel's question or provide any additional clarification. To this date, there is no procedure in place to address the situation of when a person is "financially able" or not to pay the annual fee.

68. On or about April or May, 2017, Mr. Roath mailed a TBI form to Det. Clark with updated information regarding his employment and vehicle registration.

69. On May 19, 2017, Det. Clark emailed counsel to say "Per the Tennessee Bureau of Investigation Sex Offender Registry manager Quinton Roath will need to schedule a time to come in and update his information in person. I will be out of town next week but back on Friday if he would like to schedule a time for next Friday." Det. Clark did not provide a name for the person she called the "manager." When challenged on why an in-person report was required, Det. Clark emailed a reply and cut and pasted T.C.A. 40-39-203(a)(1) and ended by saying "Any additional questions can be answered at the TBI hotline. The phone number is 888-837-4170 or email is TBISORMGR@tn.gov."

42

70.   An email was sent to TBISORMGR@tn.gov asking for whoever was at the other end of the non-specific email address to "respond timely" to the same inquiry posed to Det. Clark.

71.   On May 26, 2017, an anonymous email was received from TBISORMGR@tn.gov that again merely cut and pasted T.C.A. 40-39-204. No human being identified his or herself as the author of the email.

72.   On May 30, 2017, Det. Clark and Mr. Roath communicated and set an appointment for an in-person update to take place at the Franklin Police Department on May 31, 2017.

73.   On May 31, 2017, Mr. Roath appeared with his counsel, Jerry Gonzalez, at the Franklin Police Department and both checked in at the front desk. After several minutes, Det. Clark appeared in the front lobby, where Mr. Roath and his counsel were waiting, accompanied by Sgt. Jack Morgan who appeared with a stern look on his face and did not bother to introduce himself. His demeanor was threatening and he looked like he was ready to pick a fight.

74.   Sgt. Morgan authoritatively declared that the only way the update would take place was that Mr. Roath - **without counsel** - would go into a side room that had a door closed and update his information. Sgt. Morgan insisted that counsel would not be allowed to accompany Mr. Roath as he updated the information, saying "we're not going to allow it" and "you're not going into the room", and "that's the bottom line."

75.   When counsel insisted that Mr. Roath was not going to subject himself to interrogation or be without counsel, Sgt. Morgan declared that they would leave the door to the room open and that counsel could stand outside at the threshold but not go in.

43

76. When pressed to explain why and if this procedure was a "department policy", Sgt. Morgan first said it was what "they prefer - it's a safety issue", without identifying who he meant by "they". When challenged and asked again to respond whether this procedure - of not allowing counsel to accompany his client - was a department policy, Sgt. Morgan replied "yes".

77. The City of Franklin does not have authority to implement its own registration requirements, such as dictating only one individual who can accept a registration update or such as dictating that one's signature must be on an electronic pad or such as requiring entry into a particular interrogation room, under "Dillon's Rule". See *Southern Constructors v. Loudon County Bd.,* 58 SW3d 706 (Tenn. 2001).

78. When counsel offered to be pat down to address the "safety issue", Sgt. Morgan refused.

79. Throughout the request for explanation, Sgt. Morgan was rude and brutish and constantly interrupted the conversation in an apparent attempt to show authority and bully counsel. At one point, Sgt. Morgan said that he would consult with the District Attorney and would proceed with what she instructed him to do.

80. Mr. Roath then entered the room with Det. Clark to update his information while counsel had to stand outside, not allowed to enter the threshold of the room, and with Sgt. Morgan, armed with a firearm, standing over him to ensure compliance.

81. Det. Clark posed questions to Mr. Roath in a deliberately whispered tone so that counsel could not hear. It was difficult if not impossible to hear any questions posed to Mr. Roath by Det. Clark.

82. During the process, Sgt. Morgan was personally given a paper copy of the Sixth Circuit opinion in *Does v Snyder* and asked to review it with Det. Clark.

83. On June 1, 2017, Det. Clark and Sgt. Morgan were emailed and asked for any authority in support of their practice and policy of not allowing attorneys to accompany their clients during questioning or in-person update of their SOR information. To date, no response has been received.

84. Also, on June 1, 2017, Det. Clark and Sgt. Morgan were emailed and informed of errors made on the TBI form by Det. Clark and asked for "any procedure by which Mr. Roath can petition to have this erroneous information corrected." No such procedure has ever been produced.

85. On June 7, 2017, Mr. Roath called the Franklin Police Dept. and left Det. Clark a voicemail message.

86. When Det. Clark called back, Mr. Roath said he was considering getting a job where a daycare was located across the street within a distance one could touch by throwing a baseball. Det. Clark said it was a "thousand feet" and said it would be a violation if he took the job. Det. Clark said that she would instruct Mr. Roath to quit the job and if he did so then "we're all good". If not, then "I'll type it up and send it to the district attorney and she makes the decision then."

   a. By "type it up", Det. Clark meant an affidavit for an arrest warrant.

   b. In fact, this was an incorrect and unlawful interpretation of the law. Prior to the date of Mr. Roath's offense of conviction in 2009, the law only restricted

employment from this exclusion zone for those whose offenses involved minor victims. See, 2006 Tenn. Pub. Acts, ch. 890, § 20.

c. It was not until *after* Mr. Roath's date of offense of conviction that the law was changed to prohibit *any* "sexual offender, as defined in §40-39-202", whose victims were *either* a minor *or* adult, from such an employment exclusion zone.

d. Mr. Roath did not have a victim at all, minor or adult, in his offense of conviction and is not "a sexual offender, as defined in §40-39-202".

e. Det. Clark was fully aware that Mr. Roath did not have a victim, minor or adult, in his offense of conviction and that Mr. Roath was not a "sexual offender, as defined in §40-39-202".

f. Det. Clark was fully aware of the authoritative, published opinion of the Sixth Circuit in *Does v Snyder,* 834 F.3d 696 (6th Cir. 2016), which held that the SOR law of Michigan, which is substantively identical to that of Tennessee, was unconstitutional in so far as passed after the date of offense under the ex post facto clause of the U.S. Constitution.

g. As a direct result of Det. Clark's intent to seek a warrant for Mr. Roath's arrest if he began employment within 1000 feet of a daycare and refused to quit after told to, Mr. Roath has not sought, has not accepted employment, and has had to quit employment that would meet that criteria and is further apprehensive about accepting any employment at all because he is unable to accurately and definitively determine if it would be within an exclusion zone.

46

87. During the same call, Mr. Roath said he wanted his counsel in the room, meaning for any in-person reporting. Det. Clark replied, "so the reason why he can't come in the room is a safety issue. That room is small, my back's against the wall, and, uh, so the best scenario is the scenario we had the other day where he was standing at the door, the door would be open."

88. Mr. Roath asked if there was a way he could work it out to where he is in the same room with his counsel. Det. Clark said "he's right there, I don't see what the difference is, really."

89. Mr. Roath insisted that he really wanted his lawyer with him and offered to do it in a public place. Det. Clark said she would run it by her "supervisor, see what he says. Maybe we can have another detective in there." Det. Clark said she didn't want to be in the room with two people who "are kind of hostile with me, you know. This situation is different from every other situation, I don't have these issues, you know. And so, it's kind of a hostile situation. And, there's no reason for it to be. So, for my safety and my security, based on the room size, I would probably have to have another detective in there with me, just for safety."

   a. By "this situation is different", Det. Clark meant a sex offender registrant who appears with his attorney. Det. Clark regularly sits alone in the same room with persons on the registry who were actually convicted of seriously violent sexual acts, unlike Mr. Roath, and she does not have a "safety" issue with them. The "safety issue" is purely the presence of an attorney during questioning which she does not like.

47

b.      There is not a single communication, exchange, or other encounter, written or verbal, where counsel has raised his voice or otherwise acted in any kind of hostile manner. In fact, up until the May 31 appearance, the only exchanges between counsel and Det. Clark have been by email or by phone.

c.      Nor has Mr. Roath ever exhibited any hostile behavior, verbal or physical.

d.      In fact, having the attorney stand at the threshold of the room facing in while Det. Clark is in the room with her back against the back wall does not address a "safety issue" at all and is merely a pretext to create an environment where a registrant is not protected by learned counsel.

90.     On June 7, 2017, at approximately 09:36 a.m., Mr. Roath called for Det. Clark again. When Det. Clark answered, she told him that "we're going to have to stick with the same situation, where your attorney can stand at the door, and the door will be open, you can stop and ask him any questions you want, but he's not coming in."

91.     On June 7, 2017, at approximately 10:07 a.m., Mr. Roath called for Det. Clark again. Mr. Roath reached her voicemail and left another message.

92.     On June 7, 2017, at approximately 10:39 am., Det. Clark called back. Mr. Roath asked if he could give his report in the open of the lobby and, if not, if he refused to go into the room, would she refuse to take his report. Det. Clark explained that he has to sign an electronic pad attached to the computer in the room.

93.     Mr. Roath asked again if he could give his report in the open of the lobby. Det. Clark again said he would have to go in the room to sign the electronic pad. Det. Clark said his counsel would still not be allowed in the room.

48

94.     Mr. Roath asked, "what if I refuse to come in that room without my counsel?" Again, Det. Clark quibbled with him, insisting it's not "an issue."

95.     Mr. Roath asked again, "if I refuse to go in the room and sign the pad, will you refuse to take my report?" Det. Clark replied that the report "is not complete so I can't send the report to TBI without it being signed."

96.     Mr. Roath asked again, "if my counsel can't go in there and I refuse to go in there, then what would happen?" Det. Clark said "it would be like you're not reporting so then I would type it up and I would send it to the district attorney and let them make the decision of whether or not they want to violate you."

   a.     The term "violate" is a term used with someone who is on probation or parole. Mr. Roath is not on probation or parole.

   b.     There is absolutely nothing in the law that says Mr. Roath must sign an electronic signature pad in a particular, closed, interrogation room, much less without counsel present. In fact, Mr. Roath had presented a signed TBI form with his signature on it, signed under penalty of perjury, which is all the law requires.

   c.     Nor does any law allow the "agency" taking the report to interrogate the registrant.

   d.     Nor does any law say that a registrant must hand-deliver a report to any one particular person but rather must give the report to a designated "agency".

   e.     Instead, T.C.A. 40-39-203(i) merely states that "TBI registration forms shall require the registrant's signature and disclosure of ... information, under penalty of perjury..." T.C.A. 40-39-202(25) defines the "TBI registration form" as "the

49

Tennessee sexual offender registration, verification and tracking form." This "form" is attached as **Exhibit 2**.

f.     The use of an electronic signature pad in a closed room where counsel is not allowed is a pretext to forcing registrants to be enclosed in a room with a person authorized to arrest them and expose themselves to involuntary interrogation under penalty of failing to report, which is a felony.

g.     The mere threat that failing to go into that room - and only that room - to tender an updated form under penalty of possible arrest for a felony couched as a "failure to report" would lead a reasonable person to believe they were not free to leave.

h.     Mr. Roath does not feel that he is free to leave that room once he enters because Det. Clark said that any noncompliance would subject him to possible arrest. An arrest, even if ultimately defeated, would, at a minimum, subject him to Williamson County's pay-to-be-released-from-jail system of money bail that discriminates against the poor, like Mr. Roath. Mr. Roath would either have to borrow money from family to pay for his release or would have to sit in jail until his case was adjudicated, which could be months or even years.

97.     Mr. Roath is utterly confused about what is expected of him, what laws - federal or state - apply to him and what would subject him to arrest. When he, directly or through counsel, asks for clarification to law enforcement officials, he is merely handed a standard form that does not address his concerns or questions, is given the run-around, or is given vague and nonspecific answers to his questions. Most often, individuals like Det. Clark just

50

argue with him instead of providing him with useful information. At worst, he is given information that is materially and legally inaccurate.

98.    Mr. Roath has had to decline employment because of its proximity to a prohibited zone and remains unemployed and practically unemployable to this day and remains unsure as to whether these employment and residency restrictions apply to him or not. Mr. Roath does not have any access to such exclusion or prohibited zones in an easily readable or viewable format.

99.    Mr. Roath is constantly harassed by police because his license plate and his driver's license bring him up as a "sexual offender" even though he never committed an actual sexual offense.

   a.    Mr. Roath's driver license is annotated with "88 T.C.A. 40-39-201 et seq" which is a Department of Safety code alerting law enforcement that the holder is registered as a sex offender.

   b.    On one occasion, he had several law enforcement officers, who refused to identify themselves when asked, appear at his residence and "asked" to search his home. When he refused, they parked their unmarked SUV's down his road, side by side so as to block the road. It appeared they were stopping residents and informing them that a dangerous sex offender lived in their neighborhood.

100.   Mr. Roath has, at times, been homeless because of erroneous and inconsistent instructions by various law enforcement officials with regards to Tennessee's SOR and residency restrictions.

101.   Mr. Roath is in constant fear of arrest.

51

## COUNT I

### (Ex Post Facto, 28 U.S.C. 2201 - all defendants)

102.   The pre-offense retroactive application of the Tennessee SOR Act violates the Ex Post Facto Clause of the U.S. Constitution, Art. I, § 10, cl. 1, because it makes more burdensome the punishment imposed for offenses committed prior to its enactment.

## COUNT II

### (Right to Travel - 42 U.S.C. 1983, 28 U.S.C. 2201 - all defendants)

103.   The right to travel is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

104.   The Tennessee SOR Act substantially interferes with Plaintiff's ability to travel and subjects him to the arbitrary whim of a local law enforcement officer for permission to travel. Terms like "frequently for work" or "other legitimate purpose" or "emergency situations" are vague and not defined and may vary from one local law enforcement officer to another.

105.   The Tennessee SOR Act does not provide for any individualized consideration before restricting Plaintiff's right to travel.

106.   The Tennessee SOR Act does not provide for any procedural mechanism where a person can appeal the decision of a local law enforcement officer or agency disallowing travel.

107.   The Tennessee SOR Act violates Plaintiff's fundamental right to travel because it is not narrowly tailored to serve a compelling state interest.

## COUNT III

(Right to Occupation - 42 U.S.C. 1983, 28 U.S.C. 2201 - all defendants)

108.   The right to engage in the common occupations of life is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment.

109.   The Tennessee SOR Act substantially interferes with Plaintiff's ability to engage in the common occupations of life.

110.   The Tennessee SOR Act creates a wholesale barrier to employment. That barrier is not based on Plaintiff's fitness or capacity to work in the jobs from which he has been excluded.

111.   There is no rational or legitimate relationship between the 1,000 feet exclusion distance and the purported aim of protecting children.

112.   The Tennessee SOR Act does not provide for any individualized consideration before restricting Plaintiff's ability to engage in the common occupations of life.

113.   The Tennessee SOR Act does not address how the employment restriction applies to someone who did not have an identifiable human victim.

114.   The Tennessee SOR Act does not provide for any procedural mechanism where a person can appeal the decision of a local law enforcement officer or agency.

115.   The employment restriction does not apply to Plaintiff because his offense of conviction did not have a human victim, minor or adult.

116.   The Tennessee SOR Act violates Plaintiff's fundamental right to engage in the common occupations of life because it is not narrowly tailored to serve a compelling state interest.

## COUNT IV

(Right to the upbringing of Children - 42 U.S.C. 1983, 28 U.S.C. 2201 - all defendants)

117. The right to direct the education and upbringing of children is a fundamental right that is protected by the Due Process Clause of the Fourteenth Amendment.

118. The Tennessee SOR Act substantially interferes with Plaintiff's ability to be involved in the education and upbringing of his children.

119. The Tennessee SOR Act does not provide for any individualized consideration before restricting Plaintiff's right to be involved in the education and upbringing of children.

120. The Tennessee SOR Act violates Plaintiff's fundamental right to be involved in the education and upbringing of children because it is not narrowly tailored to serve a compelling state interest.

## COUNT V

(Freedom of Speech - 42 U.S.C. 1983, 28 U.S.C. 2201 - all defendants)

121. The First Amendment prohibits abridgement of the freedom of speech. The Fourteenth Amendment incorporates the First Amendment against the states.

122. The Tennessee SOR Act requires Plaintiff to report information about his Internet accounts and activity to law enforcement, which substantially interferes with access to the Internet as a forum for speech and eliminates his opportunities for anonymous Internet speech.

123. It also interferes with his ability to communicate by email or other Internet-related method with his attorney for fear that such communication could be monitored by law enforcement without his consent.

54

124. The Tennessee SOR Act's requirements to report information about Internet accounts and activity is invalid under the First Amendment both on its face and as applied because it is not narrowly tailored to serve a compelling state interest and because it prohibits a substantial amount of protected speech.

125. Tennessee SOR law is invalid under the First Amendment in as much as it completely restricts Plaintiff's right to choose or change his own name.

126. The Tennessee SOR Act is invalid under the First Amendment in as much as it restricts Plaintiff from attending traditionally public forums such as public parks if he has reason to believe there are minor children around. Such prohibition is not narrowly tailored nor based on an individualized assessment of risk as to this plaintiff, especially considering that Plaintiff was not convicted of any actual sexual misconduct with minors.

### COUNT VI

(Vagueness - 42 U.S.C. 1983, 28 U.S.C. 2201 - all defendants)

127. The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws that are unconstitutionally vague. As a matter of due process, statutory requirements must be written with sufficient specificity that persons of ordinary intelligence need not guess at their meaning and will not differ as to their application.

128. The Tennessee SOR Act contains provisions that are invalid under the vagueness doctrine because those provisions fail to provide a person of ordinary intelligence fair notice of what is required and what is prohibited under the statute, making it impossible for Plaintiff to conform his conduct to the statutory requirements and making it likely that the statute will be enforced in different ways in different places or against different people.

55

129. The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws with which it is impossible to comply. The Tennessee SOR Act contains provisions with which compliance is impossible.

130. The parts of the Tennessee SOR Act that are void for vagueness or are impossible to comply with include but are not limited to:

    a.    The prohibition on working within an Exclusion Zone;

    b.    The prohibition on loitering within an Exclusion Zone;

    c.    The prohibition on residing within an Exclusion Zone;

    d.    The definition and basis for 1,000 feet and how it is measured;

    e.    The definition and process for "in person" reporting;

    f.    The definition of "agency" (Tennessee law) or "jurisdiction" (federal law) to which reporting is done;

    g.    The time requirements for reporting under federal law as opposed to state law;

    h.    The definition of "residence" under federal law as opposed to state law.

    i.    The definition of "offender" under state law;

    j.    The prohibitions based on the status of a human victim where the offense of conviction has no victim;

    k.    The information that must be reported under federal law as opposed to state law;

    l.    The definition of where "children may be present";

    m.    The definition of "reasonably" and "chilling effect" where a library director may completely banish an offender from the library.

## COUNT VII

### (Liberty Interest - 28 U.S.C. 2201 - all defendants)

131. Plaintiff, never convicted or adjudicated of a sex offense as defined under Tennessee law, has a liberty interest in his name and picture not being posted on a public offender database.

132. Plaintiff has not received any notice or opportunity to challenge Defendants' inclusion of him on Tennessee's Sex Offender Registry.

133. Because the Tennessee Registry may only include information required to be reported by an "offender" as defined under Tennessee law and because Plaintiff does not meet that definition, the Tennessee Bureau of Investigation may not enter information into its central database on an individual who does not have a qualifying conviction.

134. Inclusion in Tennessee's Sex Offender Registry when Plaintiff does not meet the definition of "offender" under Tennessee law and has no opportunity to challenge his inclusion in the registry, violates his due process rights under both the substantive and procedural due process prongs of the 14th Amendment.

## COUNT VIII

### (5th Amendment self-incrimination - all defendants)

135. The Tennessee SOR law requires those under its yoke to register and provide information by completing and submitting preset forms.

136. Failure to complete the forms and verify the information therein subjects them to severe penalties under federal and state law.

57

137. Those subject to the Tennessee SOR Act must register without a decision on the merits of their claims of privilege from self-incrimination or fail to register and risk onerous and rapidly mounting penalties while awaiting the State's pleasure whether to initiate a prosecution against them.

138. Any error in the submitted forms or a deliberate falsehood or even admission of one's residence address or place of employment, if within an exclusion zone or reported outside the prescribed reporting deadline, may be used to prosecute the registrant under both state and federal law.

139. The demanded information and the required submission on preset forms are directed at a highly selective group inherently suspect of criminal activities and inquire into an area permeated with criminal statutes where response to any of the form's questions in context might involve the registrants in the admission of a crucial element of a crime.

140. Forcing Plaintiff to speak or to make such admissions under penalty of incarceration for failure to speak violates his Fifth Amendment right against self-incrimination.

**COUNT IX**

(42 U.S.C. 1983 - Clark and Morgan)

141. Demanding that Plaintiff enter a particular room and subject himself to interrogation where he is subject to arrest for failing to "report" updated information is to subject him to restraint of freedom of movement of the degree associated with being in custody.

142. Appearing for an in-person report under these conditions causes Plaintiff to be shocked and extremely anxious from the possibility of arrest that generally arises during police station interrogations.

58

143. These conditions cause Plaintiff, and any other reasonable person, to be lured into speaking by a longing for prompt release.

144. Under these conditions, law enforcement officers who question the plaintiff have the authority to affect the duration of his reporting by simply saying that they consider the refusal of the plaintiff to enter the interrogation room without counsel and/or to subject himself to questioning is a "failure to report", subjecting him to felony arrest.

145. These conditions present a hostile, coercive, isolating and inherently intimidating environment that causes the plaintiff immense anxiety and one where he is not free to leave and a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave. As such, during the in-person, interrogation-room reporting and questioning of the plaintiff under threat of arrest for "failure to report", Plaintiff is "in custody" for purposes of constitutional protection.

146. Additionally, the compelled requirement to self-report information that could be used in a prosecution for violating any restrictions under the Tennessee SOR violates Plaintiff's right against self-incrimination under the 5th Amendment.

a. In August, 2014, Plaintiff was arrested for a failure to report a change of residency in Robertson County within 48 hours based on his answers to compelled interrogation by Det. Kendrick of the Robertson County Sheriff's Department who was in charge of the sex offender registry in that county. The basis of the affidavit of complaint in support of an arrest warrant was Plaintiff's statements given in response to interrogation. Plaintiff had to pay to get out of jail on a $1500 bond, which he borrowed from family.

59

b.  The charge was ultimately dropped when evidence showed that he had not, in fact, changed his residence, despite Det. Kendrick's claim that Plaintiff had admitted to it.

c.  Plaintiff continues to be apprehensive about answering questions, especially without the presence or advise of counsel, during such compelled interrogations because of such misunderstandings.

147.  Plaintiff has repeatedly told Det. Clark, in person and over the telephone, that he wants an attorney present during any questioning and during his presentation of an updated report.

148.  Denying Plaintiff his right to have counsel present during any questioning and seizing him within a confined room where is not free to leave is a violation of his 4th and 5th Amendment rights.

149.  By Defendants Clark and Morgan demanding that Plaintiff enter the interrogation room against his will and subject himself to questioning without the right to terminate and leave at will and without the presence of counsel after counsel's presence has been unequivocally demanded is a violation of his rights.

### PRAYER FOR RELIEF

Plaintiff requests that the Court award the following:

1.  Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that retroactive application of the Tennessee SOR Act violates the prohibition in the United States Constitution against ex post facto laws and issue a permanent injunction restraining the defendants from retroactively enforcing the Tennessee SOR Act against Plaintiff. Among,

60

but not limited to, the provisions that are ex post facto as to this Plaintiff based on the date of his offense of conviction are:

a.       Any definitions changed after Plaintiff's date of offense;

b.       The requirement that an "offender" maintain a driver license or photo ID with the words "sexual offender" emblazoned thereon or otherwise encoded as a sexual offender and always have it in their possession;

c.       The restriction that only two "offenders" may live in the same residence;

d.       The requirement to receive permission from a school's principal in order to attend a conference;

e.       The requirement that an "offender" give written notice of his or her status to the principal of a school to drop off or pick up their own child;

f.       The requirement to report foreign travel or to seek written approval before traveling;

g.       The restriction against living, loitering, or working within 1,000 feet of an exclusion zone;

h.       The ability to charge an additional fee to run a "community notification system";

i.       The prohibition against being alone with a minor in a private area;

j.       The administrative charge of $150;

k.       The requirement to report email, social media, instant message accounts and other Internet communications platforms or devices and usernames and screen names.

2.       Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that the Tennessee SOR Act unconstitutionally interferes with Plaintiff's fundamental rights to travel, to engage in

61

the common occupations of life, to participate in the education and upbringing of his children, and to engage in free speech and choose his own name, and issue a permanent injunction restraining the defendants from enforcing against Plaintiff those provisions of the Tennessee SOR Act that interfere with these rights;

3.      Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that applying the Tennessee SOR Act to Plaintiff violates the procedural and substantive prongs of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and issue a permanent injunction restraining the defendants from enforcing the Tennessee SOR Act against Plaintiff;

4.      Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that the Tennessee SOR Act is void under the Due Process Clause of the Fourteenth Amendment due to vagueness and impossibility and issue a permanent injunction restraining the defendants from enforcing against Plaintiff those provisions of the Tennessee SOR Act that are unconstitutional;

5.      Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that an in-person reporting requirement within 48 hours (Tennessee) or three business days (Federal) is unreasonable and not related to a legitimate government purpose. Alternatively, that if the "in person" requirement is upheld, that Plaintiff need only submit an updated paper form to *any* person representing the "agency" or "jurisdiction" (meaning the State of Tennessee) and not to any one self-selected representative of the particular agency, within a period of time longer than 48 hours or 3 days;.

6.  Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that the Tennessee SOR Act does not apply to the plaintiff because he is not a "sexual offender" as defined in the Tennessee SOR Act. Alternatively, the Tennessee SOR Act does not apply to the plaintiff in so far as it conflicts with federal law and does not apply to the plaintiff where the provision is limited to a particular type of victim because his offense of conviction did not involve a human victim;

7.  Compensatory damages against Defendants Clark and Morgan for violating Plaintiff's constitutional rights;

8.  Award Plaintiff his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

9.  Grant such other relief as the Court finds just and proper.

Respectfully submitted,

 /s/ Jerry Gonzalez
Jerry Gonzalez (18379)
Attorney for Plaintiff
2441-Q Old Fort Parkway
No. 425
Murfreesboro TN 37128
615-360-6060
jgonzalez@jglaw.net