IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

QUINTON ROATH,                     )
                                   )
    Plaintiff,                     )
                                   )
                                   )        NO. 3:17-cv-00995
v.                                 )        JUDGE RICHARDSON
                                   )
WILLIAM B. LEE, DAVID RAUSCH,      )
JEFF LONG, ANDREA CLARK, JACK      )
MORGAN, CITY OF FRANKLIN,          )
DAVID ELLIOTT, JARRAD RIKAL, and   )
METROPOLITAN GOVERNMNET OF         )
NASHVILLE-DAVIDSON COUNTY,         )
                                   )
    Defendants.                    )
                                   )


**<u>MEMORANDUM OPINION</u>**

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................. 5

   I.   The Parties .......................................................................................................... 5

   II.  The Allegations ................................................................................................... 7

LEGAL STANDARD................................................................................................... 12

   I.   Rule 12(b)(1)..................................................................................................... 12

   II.  Rule 12(b)(6) .................................................................................................... 13

DISCUSSION .............................................................................................................. 14

   I.   Constitutional Claims in Counts I-VIII Against All Defendants........................ 14

   II.  Defendants Clark and Morgan's Motion to Dismiss ........................................ 20

      A.  Counts II, III, and VII........................................................................... 20

      B.  Count IX ................................................................................................ 21

         1.   Standing ......................................................................................... 21

         2.   Qualified Immunity ....................................................................... 23

            a.   Fourth Amendment .............................................................. 24

            b.   Fifth Amendment ................................................................ 28

                i.   Self-Incrimination .................................................... 29

                ii.   Right to Counsel ..................................................... 30

   III.  Defendant Franklin's Motion to Dismiss ...................................................... 31

      A.  Counts II, III, and VII........................................................................... 31

      B.  Count X ................................................................................................. 31

         1.   Standing ......................................................................................... 31

         2.   Plausibility..................................................................................... 32

            a.   Defendant Franklin's Alleged Illegal Policies ..................... 33

            b.   Defendant Franklin's Alleged Inadequate Supervision and Failure to Train ......... 34

                i.   Defendant Franklin's Alleged Failure to Train, and Inadequate Supervision of, Employees Regarding the TSOR's Alleged Violation of the Ex Post Facto Clause of the U.S. Constitution ............ 35

                ii.   Defendant Franklin's Alleged Failure to Train, and Inadequate Supervision, of Employees Regarding Interrogation and Detention of Those Seeking to Update their TSOR Information ...... 36

   IV.  Defendants Elliott and Rikal's Motion to Dismiss...................................... 36

      A.  Counts II, III, and VII.......................................................................... 36

B.   Count XI ...................................................................................................... 37

   1.   Fourth Amendment ................................................................................. 37

   2.   Fifth Amendment .................................................................................. 42

   3.   Due Process ........................................................................................... 44

V. Defendant Metro's Motion to Dismiss ............................................................... 46

   A.   Counts II, III, and VII ................................................................................ 46

   B.   Count XII ................................................................................................... 46

   1.   Defendant Metro's Alleged Illegal Policies ............................................ 47

   2.   Defendant Metro's Alleged Failure to Train and Inadequate Supervision ................ 48

     a.   Defendant Metro's Alleged Failure to Train and Inadequate Supervision of Employees Regarding the TSOR's Alleged Violation of the Ex Post Facto Clause of the U.S. Constitution ................................................... 48

     b.   Defendant Metro's Alleged Failure to Train, and Inadequate Supervision of, Employees Regarding Interrogation and Detention of Those Seeking to Update their TSOR Information ................................................. 49

IV. The State Defendants' Motion to Dismiss ......................................................... 49

   A.   Whether Defendants Lee, Rausch, and Long are Proper Parties ................... 49

   1.   Defendant Lee ........................................................................................ 49

   2.   Defendant Rausch .................................................................................. 50

   3.   Defendant Long ..................................................................................... 50

   B.   Count II ...................................................................................................... 51

   C.   Count III ....................................................................**Error! Bookmark not defined.**

   D.   Count VII ................................................................................................... 52

CONCLUSION ................................................................................................... 53

Before the Court are the following motions: (1) Defendants Andrea Clark and Jack Morgan's Motion to Dismiss the Second Amended Complaint ("SAC") (Doc. No. 101); (2) Defendant City of Franklin's ("Franklin") Motion to Dismiss SAC (Doc. No. 103); (3) Defendants David Elliott and Jarrad Rikal's Motion to Dismiss for Failure to State a Claim (Doc. No. 113); (4) Defendant Metropolitan Government of Nashville-Davidson County ("Metro")'s Motion to Dismiss for Failure to State a Claim (Doc. No. 111); and (5) Defendants David Rausch, William B. Lee, and Jeff Long's (the "State Defendants") Motion to Dismiss SAC (Doc. No. 108). For the reasons discussed below, the Court will rule as follows.

Defendant Clark and Morgan's Motion to Dismiss (Doc. No. 101) will be **GRANTED IN PART** and **DENIED IN PART**. As to Counts I-VIII, Defendants Clark and Morgan's Motion to Dismiss will be **GRANTED** and those claims will be **DISMISSED WITH PREJUDICE**. As to Count IX, Defendant Clark and Morgan's Motion to Dismiss will be **DENIED**. The Court further notes that while Plaintiff can maintain his Section 1983 claim based on the Fourth Amendment, Plaintiff cannot maintain his Section 1983 claim based on the Fifth Amendment, because Defendants Clark and Morgan are entitled to qualified immunity.

Defendant Franklin's Motion to Dismiss (Doc. No. 103) will be **GRANTED**. All counts alleged against Defendant Franklin (Counts I-VIII and X) will be **DISMISSED WITH PREJUDICE**.

Defendants Elliott and Rikal's Motion to Dismiss for Failure to State a Claim (Doc. No. 113) will be **GRANTED**. All counts alleged against Defendants Elliott and Rikal (Counts I-VIII and XI) will be **DISMISSED WITH PREJUDICE**.

Defendant Metro's Motion to Dismiss for Failure to State a Claim (Doc. No. 111) will be **GRANTED**. All counts alleged against Defendant Metro (Counts I-VIII, XII) will be **DISMISSED WITH PREJUDICE**.

The State Defendants' Motion to Dismiss (Doc. No. 108) will be **GRANTED IN PART** and **DENIED IN PART**. The Court will **GRANT** the State Defendants' Motion to Dismiss as to Counts I, IV, V, VI, and VIII. These counts will be **DISMISSED WITH PREJUDICE**. All counts against Defendants Lee and Long will be **DISMISSED WITH PREJUDICE**. The Court will **DENY** the State Defendant's Motion to Dismiss Counts II, III, and VII and Defendant Rausch's Motion to Dismiss all remaining claims against him.

Plaintiff's Motion for Partial Summary Judgment (Doc. No. 132) will also be **DENIED WITHOUT PREJUDICE**. Plaintiff's Motion for Partial Summary Judgment asks the Court to enter judgment in his favor on Count I and Count VII. (*See* Doc. No. 134 at 21.) In light of the Court's ruling on the motions to dismiss and the passage of time between now and the date the motion was originally filed (more than one year ago), Plaintiff can update his motion and refile it by August 15, 2019. The parties shall respond in accordance with the time and manner discussed in the Local Rules.

## BACKGROUND

### I.     The Parties

Plaintiff Quinton Roath is a Nashville resident who was purportedly required to register in the Tennessee Sex Offender Registry ("TSOR") pursuant to 34 U.S.C. § 20901, *et seq*. after a conviction in U.S. District Court for the Middle District of Tennessee under 18 U.S.C. § 1591(d), obstructing enforcement, which was committed around August 5, 2009. (Doc. No. 97 ("SAC") ¶ 5.) Plaintiff was not convicted of any actual unlawful or inappropriate sexual conduct with anyone.

(*Id.*) Previously, Plaintiff was a resident of Franklin in Williamson County, Tennessee. (*Id.*) Since the original filing of this case, Plaintiff moved to Nashville, but regularly travels in Franklin, and Plaintiff intends to and desires to move back there. (*Id.*)

Defendant William B. Lee is the Governor of the State of Tennessee, who Plaintiff sues in his official capacity as the executive head of the State of Tennessee which maintains the Sex Offender Registry. (*Id.* ¶ 6.)[1] Defendant David Rausch is the Director of the Tennessee Bureau of Investigation ("TBI"), who oversees the TSOR. (*Id.* ¶ 7.)[2] Plaintiff sues Defendant Rausch in his official capacity. (*Id.*)

Defendant Jeff Long is the Commissioner of the Tennessee Department of Safety and Homeland Security, who Plaintiff sues in his official capacity. (*Id.* ¶ 8.)[3] The Tennessee Department of Safety and Homeland Security includes the Driver Services Division, which issues driver's licenses and state identification cards with codes denoting the holder as a sex offender. (*Id.*)

Defendant Andrea Clark is a detective with the CID Special Victims Unit of the FPD, and is sued in her individual capacity. (*Id.* ¶ 9.) As part of her duties she personally receives annual reports by those required to register in the TSOR who reside or work within Franklin city limits. (*Id.*) She also regularly conducts spot inspections of registrants' homes, instructs registrants of their obligations under the TSOR laws, and threatens to have registrants arrested should they fail

---

[1] Governor William B. Lee has been substituted for former Governor William E. Haslam as a defendant. (Doc. No. 172).

[2] David Rausch has been substituted for former TBI Director Mark Gwyn as a defendant. (Doc. No. 153.)

[3] Jeff Long has been substituted for former Commissioner David W. Purkey as a defendant. (Doc. No. 172.)

6

to comply with what she believes is required. (*Id.*) Defendant Jack Morgan is a sergeant with the Franklin Police Department, Franklin, Tennessee ("FPD"), and is sued in his individual capacity. (*Id.* ¶ 10.)

Defendant City of Franklin ("Franklin") is the employer of Defendants Clark and Morgan and is the local agency designated to maintain the records of those registered in the TSOR who work or reside in the city of Franklin. (*Id.* ¶ 11.)

Defendant David Elliott is a detective with the Metro Nashville Police Department ("MNPD"), and is sued in his individual capacity. (*Id.* ¶ 12.) Defendant Jarrad Rikal is also a detective with the MNPD, and is sued in his individual capacity. (*Id.* ¶ 13.) Defendant Metro is the employer of Defendants Elliott and Rikal and is the local agency designated to maintain the records of those registered in the TSOR who work or reside in Davidson County. (*Id.* ¶ 14.)

## II.    Plaintiff's Allegations[4]

Around May 2017, Plaintiff mailed a TBI form to Defendant Clark with updated information regarding his employment and vehicle registration. (*Id.* ¶ 71.) On May 19, 2017, Defendant Clark emailed Plaintiff's counsel stating that Plaintiff will need to schedule a time to update his information in person. (*Id.* ¶ 72.) When Plaintiff's counsel challenged Defendant Clark on why an in-person report was required, Defendant Clark emailed a reply that cut and pasted Tenn. Code Ann. § 40-39-203(a)(1) and stated, "Any additional questions can be answered at the TBI hotline. The phone number is 888-837-4170 or email is TBISORMGR@tn.gov." (*Id.*)

---

[4] For purposes of the motions to dismiss under Rule 12(b)(6), the Court will assume the truth of the facts stated in this section (which all come from the SAC) unless indicated otherwise by the qualifying language "Plaintiff asserts," which the Court uses to preface conclusions of law (rather than allegations of fact) made in the SAC.

On May 30, 2017, Defendant Clark and Plaintiff set an appointment for an in-person update to take place at the FPD on May 31, 2017. (*Id.* ¶ 75.) On May 31, 2017, Plaintiff appeared with his counsel at the FPD. (*Id.* ¶ 76.) At the police department, Defendant Morgan declared that the only way the update would take place was if Plaintiff, without counsel, would go into a side room that had a door closed and update his information. (*Id.* ¶ 77.) When Plaintiff's counsel insisted that Plaintiff was not going to subject himself to interrogation without counsel, Defendant Morgan declared that they would leave the door to the room open and counsel could stand outside at the threshold but not go in. (*Id.* ¶ 78.) When asked whether the procedure of not allowing counsel to accompany his client was a department policy, Defendant Morgan said yes. (*Id.* ¶ 79.) Plaintiff then entered the room with Defendant Clark to update his information, while Plaintiff's counsel stood outside and was not allowed to enter the room. (*Id.* ¶ 83.) Defendant Morgan, armed with a firearm, stood over Plaintiff to ensure compliance. (*Id.*) Defendant Clark posed questions to Plaintiff in a deliberately whispered tone so that counsel could not hear. (*Id.* ¶ 84.)

Around June 7, 2017, Plaintiff told Defendant Clark that he was considering getting a job where a daycare was located across the street. (*Id.* ¶ 89.) Defendant Clark told Plaintiff that if he took the job she would submit an affidavit for an arrest warrant. (*Id.*) As a result of Defendant Clark's intent to seek a warrant for Plaintiff's arrest, he has not sought or accepted employment and has quit employment, even though Defendant Clark's interpretation of the statute is incorrect. (*Id.*)

Around September 30, 2017, Plaintiff was evicted from his apartment in Franklin solely because of his inclusion in the TSOR. (*Id.* ¶ 100.) He was able to find a new residence in Davidson County and registered in the TSOR in Davidson County, even though he maintains that the

provisions of the TSOR do not apply to him. (*Id.* ¶¶ 101-02.) Plaintiff is currently registered in the TSOR through Metro. (*Id.* ¶ 36.)

On September 28, 2017, Plaintiff approached the window "at the appropriate location" to submit his updated TBI information form, Defendant Rikal greeted him and then interrogated him. (*Id.* ¶¶ 101-02.) Defendant Rikal asked Plaintiff what year his license plate expired and suggested that if he didn't know, he call back Defendant Rikal and provide this information over the phone. (*Id.* ¶ 108.) Plaintiff responded that he could have his "attorney do it." (*Id.*) Defendant Rikal then closed the door on Plaintiff, claiming that he had to go look up some information. (*Id.* ¶ 109.) After another waiting period, Defendant Elliott entered the room. (*Id.*) Defendant Elliott said that Plaintiff had to provide the vehicle's expiration date himself but that he could have his attorney with him. (*Id.*) Plaintiff further alleges that on September 29, 2017, Defendant Elliott said that if Plaintiff did not call in with the vehicle registration expiration date, he would seek a warrant for Plaintiff's arrest. (*Id.* ¶ 112.)

On December 18, 2017, Plaintiff appeared at the Davidson County Sex Offender Registry office to report for his annual report. (*Id.* ¶ 120.) There, Defendant Elliott and Plaintiff discussed whether Plaintiff would have to pay the $150 registration fee even though he was financially unable to pay. (*Id.* ¶¶ 122-23.) During this encounter, Plaintiff repeatedly asked Defendant Elliott if he was "free to leave." (*Id.* ¶ 125.) Defendant Elliott responded that if Plaintiff did not sign the paperwork, he would be in violation of the TSOR Act, which is a Class E felony. (*Id.*)

This pattern of conduct on the part of Defendant Elliott and other officers within Metro's Sex Offender Registry office is not new. (*Id.* ¶ 130.) For example, Douglas Aldridge, an individual on the TSOR, is currently incarcerated for failing to report a change of address within 48 hours— an admission he was forced to make on his registration form. (*Id.*) When Aldridge would report to

the Davidson County Sex Offender Registry office, he felt that he was being interrogated and that he was not free to leave until he was told. (*Id.*) Jerry Eugene Brown, another individual on the TSOR, was told he had to register when he appeared in court on a misdemeanor charge unrelated to a sex offense about six years ago. (*Id.*) Mr. Brown is an unemployed veteran on Social Security retirement as his sole source of income, making less than the Federal Poverty Level as promulgated by the Internal Revenue Service. (*Id.*) Despite his poverty, he is still ordered to pay the $150 fee and has never been told by officers at the Davidson County Sex Offender Registry office that it is not a violation to not pay this fee unless he is financially able to pay. (*Id.*) Brown has never been told that he has the right to remain silent when asked questions by the officers. (*Id.*)

Plaintiff asserts that the training Metro provides to its officers at the Sex Offender Registration office is inadequate. (*Id.* ¶ 132.) Defendant Rikal, according to his training jacket obtained through an open records request, has been provided with no training on sex offender registry laws. (*Id.*) Defendant Elliott's training records going back to 2005 contain only one entry for sex offender registry training. (*Id.*)

Plaintiff is confused about what is expected of him, what laws (federal or state) apply to him, and what would subject him to arrest. (*Id.* ¶ 113.) When he, directly or through counsel, asks law enforcement officials for clarification, he is merely handed a standard form that does not address his concerns or questions, is given the run-around, or is given vague and nonspecific answers to his questions. (*Id.*) Plaintiff alleges that at worst, he is given information that Plaintiff asserts is materially and legally inaccurate. (*Id.*)

Plaintiff has declined employment because of its proximity to a prohibited zone and remains unemployed. (*Id.* ¶ 115.) He is constantly harassed by police because his license plate and his driver's license bring him up as a sexual offender, even though he never committed an actual

sexual offense. (*Id.*) Plaintiff has, at times, been homeless because of what Plaintiff asserts are erroneous and inconsistent instructions with regards to the TSOR. (*Id.* ¶ 116.) Plaintiff is afraid to pick up or drop off any of his children at daycare for fear of being arrested and is also generally in constant fear of being arrested. (*Id.* ¶¶ 117, 119.) Plaintiff further had to decline or quit jobs that would require him to travel interstate. (*Id.* ¶ 118.)

In the SAC, Plaintiff also asserts at great length a specific chronological history, and specific legal interpretation of, the TSOR Act and various of its provisions. He also asserts specific comparisons between the provisions of the TSOR Act and provisions of the Federal Sex Offender Registration and Notification Act (34 U.S.C. § 20914, formerly 42 U.S.C. § 16914 ).

Based on these allegations, Plaintiff brings the following constitutional claims against all Defendants under the Declaratory Judgment Act: (1) violation of the ex post facto clause (Count I); (2) violation of the right to travel (Count II); (3) violation of the right to occupation (Count III); (4) violation of the right to the upbringing of children (Count IV); (5) violation of freedom of speech (Count V); (6) vagueness (Count VI); (7) violation of liberty interest (Count VII); and (8) violation of Fifth Amendment right against self-incrimination (Count VIII). (*Id.* ¶¶ 133-74.)[5] In addition, Plaintiff brings Section 1983 claims against Defendants Clark and Morgan, Defendants Elliott and Rikal, Defendant Franklin, and Defendant Metro (Counts IX, X, XI, XII.). (*Id.* ¶¶ 175-

---

[5] The Court notes that within some of these constitutional claims, Plaintiff separately seeks a declaratory judgment that he should not, as a matter of interpretation of state law, fall under the purview of the TSOR. Plaintiff's placement of this declaratory judgment claim within Counts I-VIII, which are primarily constitutional in nature, has created some confusion for both the Defendants and the Court. To provide better notice to Defendants and aid the Court, Plaintiff would have been prudent to include claims based on state law in counts separate from claims making challenges under the United States Constitution. The Court, however, untangles herein the muddle created by the SAC.

183.) In the array of motions indicated above, Defendants now move to dismiss all claims against them.

## LEGAL STANDARD

### I.      Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In other words, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Therefore, subject-matter jurisdiction is a threshold issue that the Court must address and resolve prior to reaching the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "Moreover, 'where subject matter jurisdiction is challenged under Rule 12(b)(1) . . . the *plaintiff* has the burden of proving jurisdiction in order to survive the motion.'" *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)).

Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. *Id.* at 816. A facial attack is a challenge to the sufficiency of the pleading itself, requiring the Court to take allegations in the complaint as true and construing those allegations in the light most favorable to the non-moving party. *See id.* A factual attack, on the other hand, is a challenge to the factual existence of subject-matter jurisdiction. *See id.* at 817. In considering whether jurisdiction has been proved as a matter of fact, a trial court has wide discretion to allow affidavits, documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In evaluating a factual attack, no presumptive

truthfulness applies to the factual allegations, and the court is free to weigh the evidence to arrive at its decision of whether it has power to hear the case. *See United States v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 782 F.3d 260, 265 (6th Cir. 2015).

## II.     Rule 12(b)(6)

For purposes of a motion to dismiss under Rule 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such

allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id.* at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

## DISCUSSION

### I. Constitutional Claims in Counts I-VIII Against All Defendants

On April 4, 2019, in response to direction from the Court, the State Defendants filed a reply in support of their Motion to Dismiss. (Doc. No. 174.) In their reply, the State Defendants discuss the Sixth Circuit's decision in *Thomas v. Shipka*, 818 F.2d 496 (6th Cir. 1987), *vacated and remanded on other grounds*, 488 U.S. 1036 (1989). In *Thomas*, the Sixth Circuit held that Section 1983 provides the exclusive remedy for the constitutional claims brought by the plaintiff in the current case against the city official. *Id.* at 503. The Sixth Circuit further stated, "The Supreme Court has never recognized a cause of action arising directly under the Constitution in a case where § 1983 was available as a remedy." *Id.* at 500.

In *Sanders v. Prentice-Hall Corp.*, No. 97-6138, 1999 WL 115517 (6th Cir. Feb. 8, 1999), the Sixth Circuit stated, "This circuit has held that constitutional violations by state officials are not cognizable directly under the constitution (or by virtue of general federal question jurisdiction) because 42 U.S.C. § 1983 provides the exclusive remedy for such constitutional violations." *Id.* at *1 n.2 (citing *Thomas*, 818 F.2d at 503). In *Foster v. Michigan*, 573 F. App'x 377 (6th Cir. 2014), the Sixth Circuit, addressing the plaintiff's claims against the State of Michigan and Michigan Department of Transportation held, "To the extent Appellants attempt to assert direct constitutional

claims, they fail; we have long held that § 1983 provides the exclusive remedy for constitutional violations." *Id.* at 391 (citing *Thomas*, 818 F.2d at 503). These holdings have been consistently applied in lower courts throughout the Sixth Circuit. *See, e.g.*, *Woods Cove, III, LLC v. City of Akron*, No. 5:16-CV-1016, 2018 WL 4104186, at *5 n.15 (N.D. Ohio Aug. 29, 2018) ("Therefore, to the extent plaintiffs are attempting to assert a direct constitutional claim under the Fifth Amendment, that is grounds enough for failure of the claim."); *Sanders v. Walmart Stores, Inc.*, No. 3:16-CV-312-DJH, 2016 WL 6246361, at *2 (W.D. Ky. Oct. 24, 2016) ("A claim for violation of constitutional rights must be brought under 42 U.S.C. § 1983."); *Knight v. Columbus Div. of Police*, No. 2:13-CV-1271, 2014 WL 4557639, at *2 (S.D. Ohio Sept. 12, 2014) ("All claims for Constitutional violations must be raised under 42 U.S.C. § 1983, as it is the exclusive remedy for such claims."); *Johnson v. Howard*, No. 3:07-CV-156-H, 2007 WL 2772634, at *2 (W.D. Ky. Sept. 20, 2007) ("[A] plaintiff who wishes to complain of constitutional violations by government officials must use § 1983.").

The Court finds the Sixth Circuit's broad statement that Section 1983 provides the exclusive remedy for constitutional violations to be applicable here and thus will apply it. In *Thomas*, the Sixth Circuit addressed whether it should continue to recognize direct constitutional claims against local officials and municipalities as it had prior to the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which held that municipalities are "persons" within the meaning of Section 1983. *Thomas*, 818 F.2d at 499. The Sixth Circuit's answer to that question was no—in the aftermath of *Monell*, Section 1983 is the exclusive remedy for such claims. *See id.* The Sixth Circuit held that it is "unnecessary and needlessly redundant to imply a cause of action arising directly under the Constitution where Congress has already provided a statutory remedy of equal effectiveness through which the plaintiff could have

vindicated her constitutional rights." *Id.* at 500. Following this rationale, the Sixth Circuit held that given the Supreme Court's holding in *Monell*, the plaintiff could no longer bring a direct cause of action against a municipality under the Constitution and 28 U.S.C. § 1331; Section 1983 provided the exclusive remedy. *Id.* at 503. Likewise, here, via Section 1983, Congress has already provided a statutory remedy of equal effectiveness through which Plaintiff can vindicate his constitutional rights.[6] Plaintiff need not (and as discussed herein, cannot) bring such claims under the Constitution and the Declaratory Judgment Act. Accordingly, Section 1983 provides the exclusive remedy for Plaintiff's constitutional claims in this case.

Plaintiff specifically decided not to allege his constitutional claims in the SAC under Section 1983. *See* Doc. No. 124 at 9-10 ("Plaintiff does not bring any of his Declaratory Judgment Action counts under § 1983. He doesn't have to . . . While most federal court suits challenging state officials' application of constitutional state statutes are brought under 42 U.S.C. § 1983, they need not be."). Given this above discussed authority, the Court is unsure why Plaintiff chose not to bring these constitutional claims in Counts I-VIII under Section 1983. However, Plaintiff is the master of his complaint. He decides what claims to bring and what law he will rely on. *Wells v. Bottling Grp., LLC*, Civ. No. 10-99-ART, 2010 WL 4822740, at *1 (E.D. Ky. Nov. 22, 2010);

_____

[6] The Court notes that every one of the defendants in this case can be deemed a proper defendant in a Section 1983 case generally. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law."). The police officers, municipalities, and state government officials were clearly operating under the color of state law. The Court further notes that cases challenging the constitutionality of state statutes are generally brought under Section 1983 and are often alleged against the governor or another state official. *See, e.g., Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016); *Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117 (M.D. Tenn. Nov. 9, 2017); *King v. Voinovich*, No. 99-4122, 2000 WL 1140759 (6th Cir. Aug. 8, 2000). Further, such claims often seek declaratory relief. *See, e.g., Snyder*, 834 F.3d at 696; *Doe*, 2017 WL 5187117.

*Burton v. Coburn*, No. 1:08-CV-35, 2008 WL 2178057, at *1 (W.D. Ky. May 23, 2008). The Court will not disturb the specific choice Plaintiff made here regarding Section 1983. There may well be a reason why Plaintiff chose to bring Counts I-VIII in the way he did; conceivably he could have done so, for example, in an attempt to avoid a perceived hurdle posed by the statute of limitations or a qualified-immunity defense applicable to a Section 1983 claim. Accordingly, based on the above-discussed authority from the Sixth Circuit that Section 1983 provides the exclusive remedy for constitutional violations, and Plaintiff's specific decision not to allege Counts I-VIII under Section 1983, the Court holds that Plaintiff cannot move forward with the constitutional claims alleged in Counts I-VIII and will dismiss those claims with prejudice.[7]

Plaintiff presents three main arguments against this holding. First, he argues that *Thomas*, *Sanders*, and *Foster* all feature allegations for money damages and do not discuss declaratory judgment claims against state officials seeking to find state laws unconstitutional. Plaintiff is correct in pointing out this significant difference. Indeed, the Sixth Circuit is silent on whether the rule discussed in *Thomas*, *Sanders*, or *Foster* applies in the instant context. However, as previously discussed, the Court concludes that the Sixth Circuit's broad language in these cases applies here. The Court cannot simply ignore broad [and unqualified] statements from the Sixth Circuit (including the statement in *Thomas*, which is binding authority) that Section 1983 provides the "exclusive remedy for constitutional violations."

Second, Plaintiff argues that the decisions in *Sanders* and *Foster* are unpublished cases and therefore not binding authority. Plaintiff is correct that "[i]t is well-established law in this circuit that unpublished cases are not binding precedent." *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir.

---

[7] The dismissal of Counts I-VIII is with prejudice because it is based on Plaintiff's failure to state a claim under Rule 12(b)(6).

2002). However, unpublished opinions often carry persuasive weight. *United States v. Webber*, 208 F.3d 545, 551 n.3 (6th Cir. 2000). The Court finds the previously discussed holdings in *Sanders* and *Foster* persuasive and consistent with the binding statement in *Thomas*. Moreover, the Court is disinclined to disregard a series of Sixth Circuit opinions articulating a consistent view. In short, Plaintiff's position here, though hardly frivolous, runs counter to consistent and persuasive Sixth Circuit case law and thus is rejected.

Third, Plaintiff argues that the Court should follow *Planned Parenthood of Houston v Sanchez*, 403 F.3d 324 (5th Cir. 2005), in which the Fifth Circuit recognized an implied cause of action to bring preemption claims seeking injunctive and declaratory relief absent an explicit statutory claim—"the rule that there is an implied right of action to enjoin state or local regulation that is preempted by a federal statutory or constitutional provision . . . is well-established." *Id.* at 334. However, the Court finds this case distinguishable from the present case and therefore unpersuasive. The holding in *Planned Parenthood* focused on preemption claims, which are not alleged here. Now, approximately sixteen months after his SAC was filed, Plaintiff attempts to characterize Counts I-VIII as preemption claims, stating that "Counts I-VIII allege that the Tennessee SOR is effectively preempted by the U.S. Constitution which provides the substantive law." (Doc. No. 177 at 5.) The Court has reviewed Plaintiff's 84-page complaint. The word "preemption" does not appear once. The Court need not say more. Moreover, the court in *Planned Parenthood* merely stated that the "Declaratory Judgment Act . . . *might well* provide a cause of action where, as here, jurisdiction is well-established." *Id.* at 334 n.47 (emphasis added). This is not a definitive holding upon which this Court can base its decision.

Before moving on to the plethora of issues that remain, the Court notes that pursuant to three of his constitutional claims (Count II, Count III, Count VII), Plaintiff seeks a declaratory

judgment stating that the TSOR does not apply to him. Because these allegations assert entitlement to relief based not on constitutional grounds but rather on a particular interpretation of Tennessee law, the Court will not dismiss these three counts in full on the previously discussed basis. The Court will continue herein to analyze the parties' arguments for dismissing Counts II, III and VII insofar as the arguments relate to Plaintiff's claim regarding whether, as a matter of state law, the TSOR applies to him. By contrast, the Court will dismiss in full the following counts, which allege only constitutional claims, against all Defendants with prejudice for the reason discussed above: Count I, Count IV, Count V, Count VI, Count VIII.[8]

---

[8] The Court notes that the following Counts are dismissed for the additional reasons discussed below: Count II to the extent it is based on the right to international travel, Count III to the extent it is based on the constitutional right to private employment, and Count VIII.

Plaintiff has failed to adequately allege that he has standing to the extent Count II is based on the right to international travel, particularly because Plaintiff has failed to adequately allege that he has suffered an injury in fact. As discussed in more detail herein, to satisfy Article III's standing requirements, a plaintiff must, *inter alia*, show that he has suffered an injury-in-fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). "A 'concrete' injury," on the other hand, "must be 'de facto'; that is, it must actually exist." *Id.* Unless an alleged injury satisfies both requirements, it cannot give rise to standing under Article III. *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1193 (M.D. Tenn. 2017). Plaintiff alleges merely that he asked Defendant Clark whether the restrictions of Tenn. Code Ann. § 40-39-204, including the need for written approval of the designated law enforcement agency for travel out of the country, are applicable to him. (SAC ¶ 53.) This is not sufficient to adequately allege an injury to confer standing. Plaintiff does not allege that he sought to take an international trip for which he was denied permission or that he was restricted from international travel. Plaintiff also does not allege that he ever travelled internationally and was required to comply with the reporting requirements when doing so. Rather, he merely discusses harm from alleged travel within the United States. The Court, therefore, finds that Plaintiff cannot move forward with Count II to the extent he bases this claim on international travel.

Count III is dismissed to the extent Plaintiff relies on the theory that that he has been denied his constitutional right to private employment due to the "1,000 feet exclusion distance." Although the "freedom to choose and pursue a career, 'to engage in any of the common occupations of life,' qualifies as a liberty interest which may not be arbitrarily denied by the State," *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir. 1983) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)) (citation omitted), the Sixth Circuit has also held that there is no "general right to private

## II.     Defendants Clark and Morgan's Motion to Dismiss

### A.  Counts II, III, and VII

As just noted, at this stage of the Court's analysis, Counts II, III, and VII survive in part.

Defendants Clark and Morgan move to dismiss these Counts on the grounds that, as police officers

employed by the Franklin Police Department, they are not the proper parties to these claims. The

Court agrees.  Plaintiff has not alleged that Defendants Clark and Morgan personally are

responsible for deciding whether he must register in Tennessee's Sex Offender Registry under the

TSOR Act or what obligations apply to him under the TSOR Act. Instead, as discussed below, the

SAC alleges that the TBI is the entity responsible for determining whether Plaintiff must register.

As to Defendant Morgan, the SAC says nothing in this regard, and as to Defendant Clark, the SAC

---

employment." *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999); *see Doe v. Haslam*, No. 3:16-cv-02862, 2017 WL 5187117, at *16 (Crenshaw, J.) (following *Cutshall* and holding that there is no general right to private employment). Plaintiff has not alleged that he has been denied the freedom to pursue a specific career. The Court, therefore, applies a rational basis test to the TSOR Act's restrictions on employment. *See id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)). To survive rational basis scrutiny, the statute need only be rationally related to a legitimate government interest. *See Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). Plaintiff has failed to plausibly allege a lack of a rational basis to protect a legitimate government interest. The State Defendants have asserted a legitimate interest advanced by the restrictions—to protect the public—which is rationally related to the restriction and, as Plaintiff alleges in the SAC, does not stop him from obtaining private employment. Count III will therefore be dismissed to the extent it is based on the theory of a constitutional right to private employment.

   The Court further finds Count VIII is subject to dismissal because Plaintiff has failed to adequately allege standing to bring a claim challenging the constitutionality of the TSOR Act under the Fifth Amendment based on a theory of self-incrimination. The SAC does not allege that Plaintiff made incriminating statements, had the potential to make them, or asserted the privilege as a basis for declining to answer questions. Plaintiff also has not alleged that he was criminally prosecuted based on any such statement or that the government has attempted to use such statement in a criminal proceeding. Although Plaintiff alleges under Count IX that he was arrested in August 2014 for failure to report a change of residency in Robertson County within 48 hours based on his answers to compelled interrogation, he also alleges that the charge was dropped when evidence showed that he had not in fact changed his address. (SAC ¶ 180.) Furthermore, Plaintiff has not adequately alleged that any claim under Count VIII is based on the factual allegations related to the August 2014 incident. Therefore, Plaintiff has failed to plausibly allege an injury-in-fact that is not conjectural or hypothetical related to the Fifth Amendment's right against self-incrimination.

alleges only that she "receives annual reports by those required to register on the TSOR." (SAC ¶ 9.) Accordingly, because the Court finds that Plaintiff has not adequately alleged that Defendants Clark and Morgan are proper defendants for Plaintiff's claims seeking a favorable interpretation as to whether and how the TSOR applies to him, Counts II, III, and VII against them will be dismissed with prejudice.

## B. Count IX

### 1. Standing[9]

The only remaining claim as to Defendants Clark and Morgan is Count IX, which alleges a Section 1983 claim against them based on the alleged events of May 31, 2017. Defendants Clark and Morgan seek dismissal of this count based on the argument that Plaintiff has failed to adequately allege standing.[10] A motion that alleges lack of standing is properly characterized as a motion to dismiss due to the lack of subject-matter jurisdiction, cognizable under Rule 12(b)(1).[11] *See Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*, 71 F. Supp. 3d 715, 722 (E.D. Mich. 2014) (citing *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008)). The Article III standing doctrine limits the

---

[9] Defendants Clark and Morgan appear to move to dismiss every Count against them based on a lack of standing. But because the Court finds that Plaintiff has clearly alleged standing as to Counts I-VIII, and Defendants Clark and Morgan have failed to point out any reason the Court should find a lack of standing as to those Counts in particular, the Court did not specifically address standing as to those Counts before dismissing them on other grounds.

[10] Plaintiff asserts that Defendants Clark and Morgan have not adequately briefed this argument. (Doc. No. 122 at 20 n.7.) The Court understands the basis for the assertion but ultimately rejects it, particularly because Defendants Clark and Morgan's brief has a section heading that begins "Plaintiff has no standing." (Doc. No. 102 at5.) The Court therefore will address this argument here.

[11] The Court notes that Defendants Clark and Morgan incorrectly characterize a motion to dismiss for lack of standing as one being brought under Rule 12(b)(6).

category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. *Spokeo, Inc.*, 136 S. Ct. at 1547. Standing is a threshold question in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element of standing. *Id.* at 518.

"To satisfy Article III's standing requirements, a plaintiff must show: '(1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016) (quoting *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606-07 (6th Cir. 2007)). The Supreme Court has emphasized that the requirement that an injury-in-fact be "concrete and particularized" encompasses two distinct requirements. *Spokeo*, 136 S. Ct. at 1548. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). "A 'concrete' injury," on the other hand, "must be 'de facto'; that is, it must actually exist." *Id.* Unless an alleged injury satisfies both requirements, it cannot give rise to standing under Article III. *Cunningham*, 251 F. Supp. 3d at 1193.

Defendants Clark and Morgan appear to challenge only the first element of the standing requirements.[12] They claim that Plaintiff has failed to identify any "tangible damages" Plaintiff has suffered from Defendants Clark and Morgan. The Court, however, finds that Plaintiff adequately alleges that he has suffered an injury-in-fact. The SAC alleges that "appearing for an in-person report under [certain] conditions causes Plaintiff to be shocked and extremely anxious from the

---

[12] For this reason, the Court will not address the other elements.

possibility of arrest that generally arises during police station interrogations" in which Defendants Clark and Morgan have been involved. (SAC ¶ 176.) In addition, the SAC alleges that "[t]hese conditions present a hostile, coercive, isolating and inherently intimidating environment that causes the plaintiff immense anxiety." (SAC ¶ 179.) This is sufficient to confer standing. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)) (holding that mental and emotional distress constitute compensable injury in Section 1983 cases). Accordingly, the Court will not grant Defendant Clark and Morgan's motion based on Plaintiff's alleged lack of standing.

### 2. Qualified Immunity

Count IX alleges Section 1983 liability based on alleged violations of both the Fourth Amendment and the Fifth Amendment. Defendants Clark and Morgan argue that Count IX should be dismissed because they are entitled to qualified immunity as to each of the alleged violations. "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016). To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established [by] law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The plaintiff also must allege with particularity "facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (internal citations, quotation marks, and emphasis omitted). "The test is whether, reading the

complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Id.* at 562-63.

In analyzing the issue of qualified immunity, the "first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Although these two steps may be addressed in either order, both steps must be answered in the affirmative for the plaintiff's claim to proceed. *Id.* (citing *Pearson*, 555 U.S. at 236). If either step is not satisfied, then qualified immunity shields the government officer from civil damages. *Id.* With this background in mind, the Court addresses, in turn, whether each claim of constitutional violations survives the instant Motion to Dismiss.

### a. Fourth Amendment

Defendants Clark and Morgan appear to argue that they are entitled to qualified immunity. Specifically, Defendants Clark and Morgan first argue that Plaintiff has not adequately alleged that his Fourth Amendment rights were violated, given that "neither the United States Supreme Court, nor any Circuit Court of Appeals, has ever held that the in-person registration process for sex offenders constitutes a seizure for purposes of the Fourth Amendment." (Doc. No. 102 at 10.) The Court believes that this argument misconstrues the central issue on this aspect of the motion. The issue here is not whether the in-person registration requirement for sex offenders in general *constitutes* a seizure. Rather, the issue is whether Plaintiff has adequately alleged that Defendants *Clark and Morgan* unreasonably seized him. If the answer is yes, then the Court must also determine whether the right of Plaintiff to be free from such alleged conduct was clearly

established when the event occurred such that a reasonable officer would have known that his conduct violated it. If the answer to both questions is yes, then Defendant Clark and Defendant Morgan's Motion to Dismiss based on qualified immunity fails.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). A consensual encounter becomes a seizure requiring reasonable suspicion or probable cause "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

The question of whether a seizure has occurred within the meaning of the Fourth Amendment is an objective one. *Peete v. Metro. Gov't of Nashville & Davidson Cty.*, 486 F.3d 217, 220 (6th Cir. 2007). The Supreme Court has defined a "seizure" as "meaningful interference, however brief, with an individual's freedom of movement." *United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984). Furthermore, the Supreme Court has made clear that the meaningful interference constituting a seizure can take the form of either physical force or a show of authority. *See Mendenhall*, 446 U.S. at 553. Circumstances indicating a seizure include: the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *See Crawford v. Geiger*, 656 F. App'x 190, 202 (6th Cir. 2016).

The Court finds that Plaintiff has adequately alleged that Defendants Clark and Morgan violated his Fourth Amendment right to be free from an unreasonable seizure. The SAC pertinently alleges the following: When Plaintiff arrived at the FPD for an appointment to update his information on the TSOR, Defendant Morgan authoritatively declared that the only way the update to the TSOR would take place was if Plaintiff, without counsel, would go into a side room that had a door closed and update his information. (SAC ¶ 77.) When Plaintiff's counsel insisted that Plaintiff was not going to subject himself to interrogation without counsel, Defendant Morgan declared that they would leave the door to the room open and that counsel could stand at the threshold but not go in. (*Id.* ¶ 78.) When challenged and asked again to respond whether the procedure of not allowing counsel to accompany his client was a department policy, Defendant Morgan said yes. (*Id.* ¶ 79.) Plaintiff then entered the room with Defendant Clark to update his information while Plaintiff's counsel stood outside, not allowed to enter the room, and Defendant Morgan, armed with a firearm, stood over him to ensure compliance. (*Id.* ¶ 83.) These Defendants "[d]emand[ed] that [he] enter a particular room and subject himself to interrogation where he is subject to arrest for failing to 'report' updated information . . . " (*Id.* ¶ 175.) From these circumstances, Plaintiff draws the legal conclusion (which the Court does not accept or reject for purposes of this motion) that he was placed "in custody" for constitutional purposes. (*Id.* ¶ 179.)

Viewing the totality of the circumstances, the Court finds that Plaintiff has adequately alleged that he was unreasonably seized in violation of the Fourth Amendment. Plaintiff has alleged circumstances that the Sixth Circuit has said indicate a seizure: the threatening presence of multiple officers, the display of a weapon by an officer, and the use of language or tone that indicate that compliance with the officer's request is compelled. Based on Plaintiff's factual allegations, which the Court must accept as true for purposes of resolving the instant Motion to

26

The Court finds that Plaintiff has adequately alleged that Defendants Clark and Morgan violated his Fourth Amendment right to be free from an unreasonable seizure. The SAC pertinently alleges the following: When Plaintiff arrived at the FPD for an appointment to update his information on the TSOR, Defendant Morgan authoritatively declared that the only way the update to the TSOR would take place was if Plaintiff, without counsel, would go into a side room that had a door closed and update his information. (SAC ¶ 77.) When Plaintiff's counsel insisted that Plaintiff was not going to subject himself to interrogation without counsel, Defendant Morgan declared that they would leave the door to the room open and that counsel could stand at the threshold but not go in. (*Id.* ¶ 78.) When challenged and asked again to respond whether the procedure of not allowing counsel to accompany his client was a department policy, Defendant Morgan said yes. (*Id.* ¶ 79.) Plaintiff then entered the room with Defendant Clark to update his information while Plaintiff's counsel stood outside, not allowed to enter the room, and Defendant Morgan, armed with a firearm, stood over him to ensure compliance. (*Id.* ¶ 83.) These Defendants "[d]emand[ed] that [he] enter a particular room and subject himself to interrogation where he is subject to arrest for failing to 'report' updated information . . . " (*Id.* ¶ 175.) From these circumstances, Plaintiff draws the legal conclusion (which the Court does not accept or reject for purposes of this motion) that he was placed "in custody" for constitutional purposes. (*Id.* ¶ 179.)

Viewing the totality of the circumstances, the Court finds that Plaintiff has adequately alleged that he was unreasonably seized in violation of the Fourth Amendment. Plaintiff has alleged circumstances that the Sixth Circuit has said indicate a seizure: the threatening presence of multiple officers, the display of a weapon by an officer, and the use of language or tone that indicate that compliance with the officer's request is compelled. Based on Plaintiff's factual allegations, which the Court must accept as true for purposes of resolving the instant Motion to

Dismiss, Defendants Clark and Morgan did not have reasonable suspicion or probable cause to justify the seizure. Accordingly, the Court finds that Plaintiff has prevailed on the first of the two questions that are determinative of Defendant Clark and Morgan's qualified immunity claim.[13]

Accordingly, the Court proceeds to the second question, determining whether the right of Plaintiff to be free from an unreasonable seizure was clearly established when he went to the FPD in May 2017 such that a reasonable officer would have known that Defendants' alleged conduct violated it. The Court finds that it was. While "clearly established" does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), it does imply that the unlawfulness of the official action must be reasonably apparent. *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 592 (6th Cir. 1994). Accordingly, the phrasing of the issue must be sufficiently particularized so as not to render the defense meaningless by converting it "into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson*, 483 U.S. at 639.

In light of the decisions discussed above, the Court concludes without difficulty that long prior to May 2017 it had been clearly established that the seizure of an individual requires reasonable suspicion or probable cause of criminal activity,[14] such that a reasonable officer would have had fair warning that such conduct would violate the Fourth Amendment. Surely, any

---

[13] Defendants do not argue that Plaintiff could have left without updating his information and for that reason was not in custody, and the allegations in Paragraphs 175 and 179 of the SAC imply that Plaintiff's departure was not an option.

[14] Any formal arrest and any seizure "having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981). A more limited intrusion may be justifiable under the lesser "reasonable suspicion" standard. *Florida v. Royer*, 460 U.S. 491, 514 (1983).

reasonable officer would understand that a seizure without probable cause or reasonable suspicion has simply not been tolerated by the Supreme Court and Sixth Circuit precedent. *See Cupp v. Murphy*, 412 U.S. 291, 294 (1973) ("Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed arrests or investigatory detentions." (internal quotation marks and citation omitted)). Likewise, the Court finds that a reasonable officer would have had fair warning that Defendant Clark and Defendant Morgan's alleged conduct—in summary, telling a person that he must go into a particular room and answer questions or else be subject to arrest for a purported failure to provide "updated" information—constituted a seizure without probable cause. Accordingly, Count IX Defendant Clark and Morgan's Motion to Dismiss to the extent that count relies on a Fourth Amendment theory.[15]

### b. Fifth Amendment

Plaintiff's Fifth Amendment Section 1983 claim against Defendants Clark and Morgan, as alleged as part of Count IX, appears to be based on two theories: (1) denial of Plaintiff's right against self-incrimination; and (2) denial of Plaintiff's right to have counsel present during questioning. The Court now addresses whether Defendants Clark and Morgan are entitled to qualified immunity as to each theory in turn.[16]

---

[15] The Court declines to address Plaintiff's ex post facto argument in connection with his Section 1983 claim against Defendants Clark and Morgan because such a theory is not alleged in the SAC as a basis for Section 1983 liability against those Defendants.

[16] Defendants Clark and Morgan frame Plaintiff's Fifth Amendment claims as based on a theory of retaliation. The Court disagrees with this interpretation of the SAC, which in the Court's view contains no claim of Fifth Amendment retaliation.

###### i. Self-Incrimination

The first issue is whether the facts alleged in the SAC adequately allege a violation of Plaintiff's Fifth Amendment right against self-incrimination. The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. The Sixth Circuit, following Supreme Court precedent, has held that "'[m]ere coercion does not violate the . . . Self-Incrimination Clause absent use of the compelled statements in a criminal case.'" *McKinley v. City of Mansfield*, 404 F.3d 418, 430 (6th Cir. 2005) (quoting *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (plurality opinion) (footnote omitted)). "It is only once compelled incriminating statements are used in a criminal proceeding, as a plurality of six justices held in *Chavez v. Martinez*, that an accused has suffered the requisite constitutional injury for purposes of a § 1983 action." *Id.* (citing *Chavez*, 538 U.S. at 769); *see also Haddad v. Gregg*, 910 F.3d 237, 253 (6th Cir. 2018) ("Plaintiff's statements have not been used in a criminal proceeding against him. The Court finds no Fifth Amendment violation."); *Lingler v. Fechko*, 312 F.3d 237, 238-40 (6th Cir. 2002) (finding no Fifth Amendment violation sufficient to sustain a § 1983 action where police officer-employees who had made incriminating statements in compulsory interviews with superiors were never prosecuted). The SAC does not allege that Plaintiff even made incriminating statements, much less that Defendants Clark and Morgan compelled such incriminating statements let alone ones that were then used in a criminal proceeding. Accordingly, Plaintiff fails to adequately allege his Fifth Amendment claim, which will be dismissed pursuant to Rule 12(b)(6).[17]

---

[17] Defendants Clark and Morgan's Motion to Dismiss was brought under Rule 12(b)(6) for failure to state a claim, and the Court ultimately concludes that dismissal is proper under this rule, and thus is a dismissal on the merits. The Court has considered whether instead the dismissal should be under Rule 12(b)(1) for lack of subject-matter jurisdiction (lack of injury-in-fact to support standing), but discerns that most cases treat lack of use of statements in a criminal prosecution as

### ii.    Right to Counsel

The next issue is whether the facts alleged in the SAC adequately allege a violation of Plaintiff's Fifth Amendment right to counsel. The Court finds that, for the reasons just discussed, he does not. The Fifth Amendment protects a person from self-incrimination, and as part of that protection there is an inferred Fifth Amendment right to counsel as contrasted with the Sixth Amendment right to counsel. Thus, the Fifth Amendment has been interpreted to require police to give "Miranda warnings," including advisements regarding the right to an attorney (perhaps appointed at public expense), in certain circumstances and "to require suspects to voluntarily waive their rights to counsel before custodial interrogation may proceed" *Brown v. City of Franklin*, No. 3-10-1146, 2011 WL 2971092, at *6 (M.D. Tenn. July 20, 2011). As previously discussed, it is only once compelled incriminating statements are used in a criminal proceeding that an accused has suffered the requisite constitutional injury for purposes of a Section 1983 action under the Fifth Amendment. Because no allegedly coercive statements have been used against the Plaintiff in a criminal proceeding, Plaintiff has not been injured by any statements allegedly made in violation of the Fifth Amendment. Thus, Plaintiff fails to adequately allege his Fifth Amendment claim. Again, the analysis need not go further. Plaintiff's Section 1983 claim against Defendants Clark and Morgan based on the Fifth Amendment cannot survive the instant Motion to Dismiss.[18]

---

grounds for dismissal (or judgment) on the merits, rather than grounds for dismissal for lack of subject-matter jurisdiction (and thus dismissal not on the merits). *See, e.g., Lingler*, 312 F.3d at 239-40 (affirming summary judgment granted on this basis).

[18] The Court again notes that the parties consistently confuse Plaintiff's overarching constitutional claims with his Section 1983 claims against Defendants Clark and Morgan. The relevant issue on Defendants Clark and Morgan's Motion to Dismiss is not whether the TSOR Act violates the Constitution, but rather whether Plaintiff has plausibly alleged that Defendants Clark and Morgan's actions violated Plaintiff's constitutional rights.

In light of the foregoing, Defendants Clark and Morgan's motion will be granted with respect to Counts I-VIII, and those claims will be dismissed with prejudice. Defendant Clark and Morgan's Motion to Dismiss will be denied as to Plaintiff's Section 1983 claim (Count IX) because Plaintiff can maintain his Section 1983 claim based on the Fourth Amendment (though not the Fifth Amendment).

### III. Defendant Franklin's Motion to Dismiss

#### A. Counts II, III, and VII

Defendant Franklin moves to dismiss these counts. Based on the Court's decision in Part I, the Court need only analyze whether Plaintiff has plausibly stated a claim against Defendant Franklin in connection with his request for a declaration that the TSOR does not apply to him. The SAC does not allege that that Defendant Franklin has anything to do with deciding the applicability of the TSOR to Plaintiff. Accordingly, because the Court finds that Plaintiff has not plausibly alleged that Defendant Franklin is the proper defendant for Plaintiff's claims interpreting whether and how the TSOR applies to him, Counts II, III, and VII against it will be dismissed with prejudice.

#### B. Count X

##### 1. Standing[19]

The only remaining claim against Defendant Franklin is Count X, which asserts a Section 1983 claim. Defendant Franklin first moves to dismiss this claim based on the argument that

---

[19] The Court notes that standing would generally be the first issue that it would address, given that standing relates to the Court's jurisdiction. However, because the Court finds that Plaintiff has clearly alleged standing as to Counts I-VIII, and Defendant Franklin has failed to point out any reason the Court should find in the contrary as to these specific counts, the Court did not specifically address standing as to those Counts before dismissing them on other grounds.

Plaintiff has failed to adequately allege standing; this argument is evaluated under the applicable standard discussed above. Defendant Franklin appears to challenge only the first element of the standing requirements, claiming that Plaintiff has failed to identify any "tangible damages" Plaintiff has suffered from its actions.[20] The Court, however, finds that Plaintiff adequately alleges that he has suffered an injury-in-fact in the form of mental distress. Count IX alleges that "appearing for an in-person report under [certain] conditions causes Plaintiff to be shocked and extremely anxious from the possibility of arrest that generally arises during police station interrogations." (SAC ¶ 176.) Count IX also alleges that "[t]hese conditions present a hostile, coercive, isolating and inherently intimidating environment that causes the plaintiff immense anxiety." (*Id.* ¶ 179.) Count X, in turn, attributes (at least implicitly) this same mental distress to the actions of Defendant Franklin. This is sufficient to confer standing. *See Stachura*, 477 U.S. at 307 (quoting *Gertz*, 418 U.S. at 350) (stating that an injury based on humiliation and mental and emotional distress is sufficient to confer standing for an action under § 1983). Accordingly, the Court will not grant Defendant Franklin's based on Plaintiff's alleged lack of standing.

### 2. Plausibility

Defendant Franklin moves to dismiss Count X against it on the additional ground that Plaintiff has failed to plausibly allege municipal liability under Section 1983. A municipality can be liable under Section 1983 only if the plaintiff establishes that: "(1) the plaintiff's harm was caused by a constitutional violation; and (2) the [municipality] was responsible for that violation." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Municipalities cannot be held liable under Section 1983 on a respondeat superior theory. *Monell*, 436 U.S. at 691 (1978). Instead,

---

[20] Because Defendant Franklin challenges only this element, the Court will not address the others.

"municipalities are liable for harms resulting from a constitutional violation *only* when the injury resulted from an 'implementation of [the municipality's] official policies or established customs.'" *Spears*, 589 F.3d at 256 (quoting *Monell*, 436 U.S. at 708 (Powell, J., concurring)) (emphasis in original).

As indicated above, with respect to the first element of municipal liability (*i.e.,* a harm caused by a constitutional violation), the Court has determined that Plaintiff has made plausible allegations as to his Fourth Amendment theory, but not his Fifth Amendment theory. Thus, Plaintiff's municipal liability claim against Defendant Franklin fails to the extent it is based on the Fifth Amendment, but the Court will proceed to address below whether Plaintiff has plausibly alleged the second element (and final) element of municipal liability based on his Fourth Amendment theory. The SAC appears to allege two theories of municipal liability: Defendant Franklin (1) developed and maintained policies and customs exhibiting deliberate indifference to Plaintiff's constitutional rights, and (2) inadequately supervised, and failed to train, its employees regarding the TSOR's violation of the ex post facto clause of the U.S. Constitution and the interrogation and detention of those seeking to update their TSOR registration. The Court discusses each theory in turn.

### a. Defendant Franklin's Alleged Illegal Policies

The SAC does not specifically allege that Defendant Franklin had an illegal policy related to the alleged Fourth Amendment violation discussed above. The only policy of Defendant Franklin alleged in the SAC—the FPD's policy of interrogation, and specifically interrogation without counsel (SAC ¶ 78)—relates to Plaintiff's failed Fifth Amendment claim. As for a possible Fourth Amendment claim, the SAC vaguely alleges that Defendant Franklin had registration requirements contemplating a registrant's entry into a particular interrogation room. But this is

insufficient to plausibly allege a claim, because Plaintiff's mere required entry into the alleged interrogation room would not *per se* effect a violation of Plaintiff's Fourth Amendment rights.

In sum, Plaintiff fails to allege that Defendant Franklin had any policy—let alone an illegal policy—specifically related to his Fourth Amendment claim, and Plaintiff fails to adequately allege an underlying Fifth Amendment violation, Plaintiff cannot maintain a Section 1983 claim against Defendant Franklin based on the "policy" theory.

### b. Defendant Franklin's Alleged Inadequate Supervision and Failure to Train

"'A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability.'" *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)).[21] "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). Under a failure-to-train theory of municipal liability, a plaintiff must show that: (1) a training program is inadequate to the tasks that the officers must perform; (2) the inadequacy is the result of the defendant's deliberate indifference; and (3) the inadequacy is closely related to or actually caused the plaintiff's injury. *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008).

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). In the context of a failure to train claim, deliberate indifference can be

---

[21] The Court notes that "[l]iability for unconstitutionally inadequate supervision or discipline is treated, for all intents and purposes, as a failure to train." *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012); *see Hall v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:17-CV-01268, 2018 WL 305751, at *20 (M.D. Tenn. Jan. 5, 2018) ("Claims of inadequate supervision or discipline are treated as failure to train claims.").

demonstrated in two ways: "through evidence of prior instances of unconstitutional conduct demonstrating that the [municipality] had notice that the training was deficient and likely to cause injury but ignored it," or "through evidence of a single violation of federal rights, accompanied by a showing that the [municipality] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Harvey v. Campbell County, Tenn.*, 453 F. App'x 557, 562-63 (6th Cir. 2011) (internal citations omitted). Deliberate indifference based on a single violation of rights requires "a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Id.* at 567 (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)).

### i. Defendant Franklin's Alleged Failure to Train, and Inadequate Supervision of, Employees Regarding the TSOR's Alleged Violation of the Ex Post Facto Clause of the U.S. Constitution

The Court finds that Plaintiff has failed to plausibly allege a Section 1983 claim against Defendant Franklin based on the alleged failure to train, and inadequate supervision of, employees regarding the TSOR's alleged violation of the Ex Post Facto Clause of the U.S. Constitution. The retroactive application of (burdensome) TSOR Act provisions enacted after a convict's offense conduct has never been declared a violation of the Ex Post Facto Clause. Therefore, Plaintiff cannot plausibly allege that the FPD's training program is inadequate on this basis. *See Ruffin v. Cuyahoga Cty., Ohio*, 708 F. App'x 276, 278 (6th Cir. 2018) ("Ruffin must show that [the municipal defendants'] alleged failures to train amounted to deliberate indifference. But the municipal defendants cannot be *deliberately* indifferent to a right that has yet to be clearly established." (emphasis in original) (internal quotation marks and citations omitted)). Furthermore, the SAC does not allege in a non-conclusory fashion how this specific alleged inadequate training

(and supervision) concerning the Ex Post Facto Clause was closely related to, or actually caused, the violation of Plaintiff's Fourth Amendment rights. Accordingly, Plaintiff cannot maintain a Section 1983 claim against Defendant Franklin based on the "failure to train or supervise as to the Ex Post Facto Clause" theory.

### ii. Defendant Franklin's Alleged Failure to Train, and Inadequate Supervision, of Employees Regarding Interrogation and Detention of Those Seeking to Update their TSOR Information

The Court finds that Plaintiff has failed to plausibly allege a Section 1983 claim against Defendant Franklin based on its alleged failure to train, and the inadequate supervision of, employees regarding the interrogation and detention of those seeking to update their TSOR information. The SAC fails to allege in a non-conclusory fashion that any inadequacy in training (or supervision) is closely related to, or actually caused, Plaintiff's alleged injury. Accordingly, Plaintiff cannot maintain a Section 1983 against Defendant Franklin based on the "failure to train or supervise as to the updating of TSOR information" theory.

In sum, the Court finds that Plaintiff cannot proceed with his Section 1983 claim against the City of Franklin based on any theory alleged in the SAC. Count X therefore will be dismissed with prejudice. Counts I-VIII also will be dismissed with prejudice for the aforementioned reasons. Thus, Defendant Franklin will be terminated as a Defendant in this case.

## IV. Defendants Elliott and Rikal's Motion to Dismiss

### A. Counts II, III, and VII

Defendants Elliott and Rikal move to dismiss Counts II, III, and VII because, as police officers employed by Metro Nashville Police Department sued in their individual capacity, they are not the proper parties to these counts. The Court agrees. Plaintiff has not alleged that Defendants Elliott and Rikal were responsible for deciding whether he must register in Tennessee's

Sex Offender Registry under the TSOR or what obligations apply to him under the TSOR. Instead, as discussed below, the SAC alleges that the TBI is the entity responsible for determining whether Plaintiff must register. Accordingly, because the Court finds that Plaintiff has not plausibly alleged that Defendants Elliott and Rikal are proper defendants as to Plaintiff's claims seeking a favorable determination as to whether and how the TSOR applies to him, Counts II, III, and VII against them will be dismissed with prejudice.

### B. Count XI

Count XI contains the following theories of liability under Section 1983 against these two Defendants based on their alleged personal encounters with Plaintiff: (1) violation of Plaintiff's Fourth Amendment right against unlawful seizure; (2) violation of Plaintiff's Fifth Amendment right (both the right to remain silent and the right not to suffer retaliation for exercising the right to remain silent); and (3) violation of Plaintiff's due process rights. (SAC ¶¶ 192-93.)[22] Defendants Elliott and Rikal move to dismiss all theories of liability in Count XI based on qualified immunity. The Court refers to the qualified immunity standard stated above and addresses each theory in turn.

#### 1. Fourth Amendment

Defendants Elliott and Rikal argue that Plaintiff's Section 1983 claim based on the Fourth Amendment should be dismissed because Defendants Elliott and Rikal are entitled to qualified immunity.[23] The Court agrees.

---

[22] The Court declines to address Plaintiff's ex post facto argument as it relates to his Section 1983 claim against Defendants Elliott and Rikal, because such a theory is not alleged in the SAC as a basis for Section 1983 liability against those Defendants.

[23] The Court believes that here again the parties' arguments misconstrue the central issue. The issue here is not whether the in-person registration requirement for sex offenders in general constitutes a seizure. Rather, the issue is whether Plaintiff has adequately alleged that *Defendants Elliott and Rikal* unreasonably seized him.

The SAC alleges the following about the first encounter, which allegedly took place on September 28, 2017 when Plaintiff went to register his information in Davidson County contemporaneously with moving there. (SAC ¶¶ 100-01.) Defendant Rikal greeted Plaintiff when he went to the window at the appropriate location in Davidson County to give his updated information pursuant to the TSOR Act. (*Id.* ¶ 102.) Defendant Rikal then asked Plaintiff several questions, including whether there were any changes and whether he had a new vehicle. (*Id.*) When Plaintiff told Defendant Rikal that everything was on the paper he had handed to Defendant Rikal several times, Defendant Rikal became annoyed and handed Plaintiff back his forms and told him, "I'll get to you in order after I get to everybody else who's going to cooperate." (*Id.*)

After everyone else was taken care of, Plaintiff again approached the window and Defendant Rikal insisted on attempting to interrogate Plaintiff. (*Id.* ¶ 103.) Plaintiff again told Defendant Rikal that the information was on the paper Plaintiff had handed to Defendant Rikal. (*Id.*) Defendant Rikal then "began to deliberately slow walk entering the information from the form into his computer in retaliation [for Plaintiff exercising his right to remain silent], making [Plaintiff] stand there and continue waiting." (*Id.* ¶ 104.) Defendant Rikal then suggested to Plaintiff that if Defendant Rikal made a mistake entering information from the paper form to the computer, it would force him (Defendant Rikal) to go back in and correct it and thus cause Plaintiff to "stand here longer." (*Id.* ¶ 105.) Defendant Rikal also asked Plaintiff what "year does the tag expire? Don't know? Are you going to feel comfortable calling me back and giving it to me over the phone?" (*Id.* ¶ 108.) Plaintiff replied that he could have "my attorney do it," and Defendant Rikal said, "sure." (*Id.*) Defendant Rikal then closed the door on Plaintiff claiming that he had to go look up some information. (*Id.* ¶ 109.)

After another waiting period, Defendant Elliott entered the room. (*Id.*) Defendant Elliott said that Plaintiff had to provide the vehicle's expiration date himself but that he could have his attorney with him. (*Id.*) The SAC further alleges, "In all, to enter one vehicle and one address, it consumed two and a half hours of [Plaintiff's] time." (*Id.* ¶ 110.)

The Court finds that Plaintiff has failed to adequately allege that this encounter was a seizure. The SAC does not allege any of the circumstances that indicate a seizure under the aforementioned standard. Plaintiff has not alleged that Defendants Elliott and Rikal applied physical force or otherwise interfered with his freedom of movement. The SAC does not allege that Defendants Elliott and Rikal displayed a weapon, touched Plaintiff, or requested anything specifically from Plaintiff in a tone that indicated that compliance with such a request was compelled. Rather, the allegations suggest just the opposite of a seizure—that Plaintiff was in a public office environment and was free to leave and return later, an option Defendants Elliott and Rikal specifically presented to Plaintiff, according to Plaintiff himself. Because Plaintiff has failed to plausibly allege that the September 28, 2017 encounter was a seizure, Plaintiff has failed to allege a violation of Plaintiff's constitutional rights. Accordingly, Defendants Elliott and Rikal are entitled to qualified immunity (based on step one of the qualified-immunity analysis) to the extent Plaintiff's Section 1983 claim under the Fourth Amendment is based on this encounter.[24]

---

[24] There is a distinction between granting Defendants' motion due to Plaintiff's failure to state a claim and granting Defendants' motion based on qualified immunity. *See, e.g., Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *2 (6th Cir. Nov. 15, 2017) ("the district court's decision [to dismiss] was not based upon qualified immunity but rather on [the plaintiff's] failure to state a claim for relief.") But this may be a distinction without a difference. As a district court in this Circuit recently explained:

> Put another way, "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded." *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009). As a result, "the standard for whether [a defendant] is entitled to qualified immunity essentially collapses into

The Court also finds that Defendant Elliott is entitled to qualified immunity as to the second alleged encounter on December 18, 2017 between Plaintiff and Defendant Elliott because Plaintiff fails to plausibly allege that a reasonable detective, such as Defendant Elliott, would have known that his conduct violated a clearly established right when the event occurred.[25] The SAC alleges that on December 18, 2017, Plaintiff appeared at the Davidson County Sex Offender Registry office for his annual report. (*Id.* ¶ 120.) During this encounter, Defendant Elliott was repeatedly asked whether Plaintiff was "free to leave." (*Id.* ¶ 125.) Defendant Elliott responded that if Plaintiff did not sign the paperwork, it would be a violation. (*Id.*) Plaintiff then signed the electronic pad

---

the standard for whether [a plaintiff] has sufficiently plead his claim for relief." *Jackson v. Jernigan*, 3:16-CV-750-JHM, 2017 WL 1962713, at *7 (W.D. Ky. May 11, 2017) (citing *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010) ("At the motion to dismiss stage in the litigation, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined") and *Morgan v. Swanson*, 659 F.3d 359, 384 (5th Cir. 2011) ("At the 12(b)(6) stage, to hold that the defendant violated the law at step one of the qualified-immunity analysis ... is simply to say that the plaintiff has stated a claim upon which relief may be granted")). Therefore, rather than address qualified immunity separately, the Court addresses the issues under the 12(b)(6) framework.

*Dahl v. Kilgore*, No. 3:18-CV-501-CRS, 2018 WL 6574785, at *3 (W.D. Ky. Dec. 13, 2018); *see also Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) ("[T]his circuit permits a reviewing court to dismiss under Fed. R. Civ. P. 12(b)(6) based on qualified immunity.")

Thus, whether couched in terms of "failure to state a claim" or "qualified immunity" dismissal here is granted under Rule 12(b)(6). The Court here couches it in terms of the latter rather than the former only because these Defendants did so in their motion. Because the Court finds that Defendants Elliott and Rikal are entitled to qualified immunity on the basis that they did not "seize" Plaintiff, the Court declines to address Defendants' additional argument that Defendant Rikal's actions were reasonable.

[25] For the purposes of appropriately addressing Defendant Metro's motion below, the Court will assume *arguendo* that the SAC adequately alleges that Defendant Elliott violated Plaintiff's Fourth Amendment rights in his encounter with Plaintiff on December 18, 2017. However, as discussed herein, Plaintiff cannot prevail on that theory, because Plaintiff fails to plausibly allege that a reasonable detective, such as Defendant Elliott, would have known that his conduct violated a clearly established right when the event occurred.

with "I do not agree" and "under threat of arrest." (*Id.* ¶ 127.) After Plaintiff's signing, Defendant Elliott was again asked whether Plaintiff was free to leave. (*Id.*) Defendant Elliott gave a vague and evasive answer of "[k]ind of thinking the instruction form is going to come up, let me check and see." (*Id.*) When asked "[s]o that's a no?," Defendant Elliott responded, "Well, I don't want him to be in violation." (*Id.*)

Although Plaintiff's right to be free from an unreasonable seizure is clearly established, Plaintiff fails to point to a single case indicating that a detective's statement to Plaintiff—that failure to sign paperwork related to the TSOR would be "a violation"—clearly creates a circumstance constituting an unreasonable seizure in violation of the Fourth Amendment. It is one thing for an officer—prudently or imprudently—to opine that if a person leaves without first signing something, it would be "a violation" of the law. It is quite another for an officer to objectively indicate that if the person in fact attempts to leave without first signing the paperwork, the person promptly will be arrested or otherwise prevented from leaving. Plaintiff fails to show why the former plausibly indicates the latter under the current alleged circumstances. Nor is it *clear* (even if it is ultimately deemed true) that a reasonable person in Plaintiff's shoes would take the officer's non-committal answers, given while occupied with ministerial tasks in an office environment, to mean that Plaintiff was not free to leave unless and until he signed the paperwork.[26] Indeed, no facts alleged in the complaint support such a position. Defendant Elliott, therefore, is entitled to qualified immunity (based at least on step two, if not step one, of the qualified immunity analysis) as to the Fourth Amendment claim arising from this second

---

[26] The Court here will assume *arguendo* that Plaintiff's option to sign the paperwork does not turn what otherwise would be a seizure into a non-seizure, *i.e.*, the Court's analysis assumes that Plaintiff had the right to refuse to sign without diminishing his Fourth Amendment rights against an unreasonable seizure.

encounter. Accordingly, Plaintiff cannot maintain his Section 1983 claim against Defendants Elliott and Rikal to the extent it is based on the Fourth Amendment.

### 2. Fifth Amendment

Although Plaintiff's Section 1983 claim against Defendants Elliott and Rikal based on the alleged Fifth Amendment violations is not stated with ideal clarity, the Court interprets that claim as based on the following theories: (1) violation of Plaintiff's right against self-incrimination; and (2) retaliation against Plaintiff for exercising his right to remain silent.[27]

In regard to the first theory, the Court starts by addressing whether the facts alleged in the SAC adequately allege that Defendants Elliott and Rikal violated Plaintiff's Fifth Amendment right against self-incrimination. As discussed above, "[i]t is only once compelled incriminating statements are used in a criminal proceeding . . . that an accused has suffered the requisite constitutional injury for purposes of a § 1983 action." *McKinley*, 404 F.3d at 430. The SAC does not allege that Plaintiff even made incriminating statements, much less that Defendants Elliott and Rikal compelled incriminating statements—let alone ones that were then used in a criminal proceeding against him. Accordingly, Plaintiff fails to adequately allege that he has suffered the requisite constitutional injury to bring this claim against Defendants Elliott and Rikal. The analysis need not go further. Defendants Elliott and Rikal are therefore entitled to qualified immunity (based on step one of the qualified-immunity analysis) as to the first theory of Plaintiff's Fifth Amendment Section 1983 claim discussed above and that claim against them will be dismissed with prejudice.[28]

---

[27] These Defendants' briefing focused heavily on the second of these theories, though parts of it are also applicable to the first theory.

[28] The claim will be dismissed pursuant to Rule 12(b)(6) based on qualified immunity (as opposed to failure to state a claim, which, as explained above, would be an appropriate alternative

In regard to the second theory, the Court starts by addressing whether the SAC plausibly alleges a Fifth Amendment retaliation claim against Defendants Elliott and Rikal. To establish a retaliation claim for exercising a constitutional right, a plaintiff must show: "(1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) that the adverse action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).[29] Once a plaintiff raises an inference that the defendant's conduct was motivated in part by the plaintiff's protected activity, the burden shifts to the defendant to demonstrate that he would have taken the same action in the absence of the protected activity. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 371 (6th Cir. 2011).

The Court finds that Plaintiff has failed to plausibly allege the second element—that Defendants Elliott and Rikal took an adverse action against him. The SAC alleges that the adverse action was "deliberately detaining plaintiff beyond the time required to enter the information presented on his paper form into the computer." (SAC ¶ 192.) Causing a person to wait in an office for two and a half hours, while clearly indicating that the person had the option to leave and come back later or provide the information over the telephone, does not constitute a sufficiently adverse action to chill a person of ordinary firmness from exercising an alleged right to remain silent. Thus,

---

basis) because this was the basis for dismissal of this claim as expressed in these Defendants' motion to dismiss.

[29] The Court further notes that an action is sufficiently adverse to be cognizable in a Section 1983 retaliation claim if it "would chill or silence a 'person of ordinary firmness' from future [constitutionally protected] activities." *Thaddeus-X*, 175 F.3d at 397 (quoting *Crawford-El v. Britton*, 93 F.3d 3, 826 (D.C. Cir. 1996)); *see Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010).

because Plaintiff has failed to plausibly allege a Fifth Amendment retaliation theory, Defendants Elliott and Rikal are therefore entitled to qualified immunity based on step one of the qualified-immunity analysis) as to this theory.[30] Accordingly, Plaintiff cannot maintain Count IX to the extent that claim is based on the Fifth Amendment.

### 3. Due Process

Count XI against Defendants Elliott and Rikal includes the following in an apparent attempt to raise a due process theory of liability under Section 1983:

> Imposing additional restrictions on Plaintiff when those restrictions are not required by either federal or state law violates Plaintiff's due process rights. These restrictions include, but are not limited to:
> a. The requirement to personally report a vehicle tag expiration date;
> b. The requirement to personally report if released from jail or probation;
> c. The requirement to pay the $150 annual administrative fee even though financially unable to pay;
> d. The requirement to go through a state court procedure to prove indigency when state law does not provide for such procedure, nor delegate the creation of such procedure, to local agencies, and when the state court itself does not recognize the procedure.

(SAC ¶ 193.)

Rule 8(a)(2) "requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (2007). Whether a complaint should be dismissed for failure to comply with Rule 8 is a matter within the district

---

[30] Once again, dismissal pursuant to Rule 12(b)(6) will be based on qualified immunity because this was the basis for dismissal of this claim as expressed in these Defendants' Motion to Dismiss.

court's discretion. *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 519 (6th Cir. 2006) (reviewing the district court's Rule 8 dismissal under an abuse of discretion standard).

When reviewing the allegations comprising Plaintiff's Section 1983 claim against Defendants Rikal and Morgan based on a due process theory, the Court is left with more questions than answers as to what the claim is about. These questions include the following:

- Is Plaintiff's due process claim based on the premise that Plaintiff need not register with the TSOR in general or on the premise that the TSOR does not require him to provide the particulated information listed in Paragraphs 193a and b?

- Does Paragraph 193a challenge a purported requirement to report a vehicle tag's expiration date generally or only a purported requirement to do so in person?

- Does Paragraph 193b challenge a purported requirement to report if released from jail or prison, or only a purported requirement to do so in person?[31]

- Do Paragraphs 193c and d purport to implicate procedural due process or substantive due process?

The Court's questions demonstrate that Plaintiff's Section 1983 claim based on a due process theory does not meet Rule 8's requirements. Plaintiff has failed to give Defendants Elliott and Rikal fair notice of what the claim is and the grounds upon which it rests. *See Twombly*, 550 U.S.

---

[31] The Court notes that the TSOR Act requires individuals falling under its purview to register within 48 hours of release on probation and report when they are released after reincarceration. *See* Tenn. Code Ann. §§ 40-39-203, 40-39-208(7). Accordingly, if Plaintiff's claim in Paragraph 193b is based on the allegation that Defendant Elliott incorrectly stated that Plaintiff must report a release from jail and probation, the allegation is not plausible, because Tennessee law in fact requires an individual falling under the TSOR Act's purview to report such information. Although Plaintiff alleges that he need not report a release from jail and probation, the Court is not required to accept legal conclusions in the SAC as true on a motion to dismiss.

at 562-63. Plaintiff's Section 1983 claim against Defendants Elliott and Rikal based on a due process theory, therefore, is not cognizable.

In sum, because the Court finds that none of theories that form of the basis of Count XI state a valid claim, that claim will be dismissed with prejudice. Counts I-VIII also will be dismissed with prejudice for the aforementioned reasons. Thus, Defendants Elliott and Rikal will be terminated as defendants in this case.

### V. Defendant Metro's Motion to Dismiss

#### A. Counts II, III, and VII

Defendant Metro moves to dismiss these counts. Based on the Court's decision in Part I, the Court need only analyze whether Plaintiff has plausibly stated a claim against Defendant Metro in connection with his request for a declaration that the TSOR does not apply to him. The SAC does not allege that that Defendant Metro has anything to do with the decision to require Plaintiff to register under Tennessee's Sex Offender Registry. Accordingly, because the Court finds that Plaintiff has not plausibly alleged that Defendant Metro is the proper defendants for Plaintiff's claims interpreting whether and how the TSOR applies to him, Counts II, III, and VII against it will be dismissed with prejudice.

#### B. Count XII

As discussed above, a municipality can be liable under Section 1983 only if the plaintiff establishes that: "(1) the plaintiff's harm was caused by a constitutional violation; and (2) the [municipality] was responsible for that violation." *Spears*, 589 F.3d at 256. Above, the Court has determined that Plaintiff fails to adequately allege that his harm was caused by any violation of his constitutional rights by a Metro officer, except that the Court will assume *arguendo* that he has adequately alleged a violation of his constitutional rights during his December 18, 2017 encounter

with Defendant Elliott. The Court therefore will examine whether Plaintiff's Section 1983 claim against Defendant Metro is cognizable based on that alleged violation.

The question, in other words, is whether Plaintiff has plausibly alleged municipal liability based on this Fourth Amendment theory. The SAC appears to allege (in Paragraphs 194 and 195, respectively) two theories of municipal liability: (1) Defendant Metro's development and maintenance of policies and customs exhibiting deliberate indifference to Plaintiff's constitutional rights; and (2) Defendant Metro's inadequate supervision and failure to train its employees regarding the TSOR's "violation of the ex post facto clause of the U.S. Constitution and the interrogation and detention of those seeking to update their [T]SOR information." (SAC ¶ 195.) The Court discusses each theory in turn.

### 1. Defendant Metro's Alleged Illegal Policies

As stated above, "municipalities are liable for harms resulting from a constitutional violation *only* when the injury resulted from an 'implementation of [the municipality's] official policies or established customs.'" *Id.* (quoting *Monell*, 436 U.S. at 708 (Powell, J., concurring)) (emphasis in original).

The SAC does not allege that Defendant Metro had an illegal policy specifically related to the alleged Fourth Amendment violation discussed above. The SAC merely makes a conclusory allegation regarding policies in general. *See* SAC ¶ 194 ("Defendant Metro-Nashville developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of . . . persons on the [TSOR], all of which caused a violation of Plaintiff's rights."). This is insufficient to survive the instant Motion to Dismiss. *See Iqbal*, 556 U.S. at 678. Accordingly, because Plaintiff fails to adequately allege that Defendant Metro had an illegal policy specifically related to his Fourth Amendment Section 1983 claim, and Plaintiff fails to adequately allege an

underlying constitutional violation based on the Fifth Amendment or Due Process, Plaintiff cannot maintain a Section 1983 claim against Defendant Metro based on the "policy" theory alleged in Paragraph 194.[32]

### 2. Defendant Metro's Alleged Failure to Train and Inadequate Supervision

#### a. Defendant Metro's Alleged Failure to Train and Inadequate Supervision of Employees Regarding the TSOR's Alleged Violation of the Ex Post Facto Clause of the U.S. Constitution

The Court refers to the standard regarding failure to train and supervise discussed above and finds that Plaintiff has failed to plausibly allege a Section 1983 claim against Defendant Metro based on the alleged failure to train, and inadequate supervision of, employees regarding the TSOR's alleged violation of the Constitution's Ex Post Facto Clause. The retroactive application of the TSOR Act's burdens that were implemented after a convict's offense conduct has never been declared a violation of the Ex Post Facto Clause. Therefore, Plaintiff cannot plausibly allege that the MPD's training program is inadequate to the tasks performed on this basis. *See Ruffin*, 708 F. App'x at 278 ("Ruffin must show that [the municipal defendants'] alleged failures to train amounted to deliberate indifference. But the municipal defendants cannot be *deliberately* indifferent to a right that has yet to be clearly established." (emphasis in original) (internal quotation marks and citations omitted)). Furthermore, the SAC does not allege in a non-conclusory fashion how this specific alleged training inadequacy was closely related to or actually caused the violation of Plaintiff's Fourth Amendment rights. Accordingly, Plaintiff cannot

---

[32] In his response brief, Plaintiff states that his Section 1983 claim against Defendant Metro is based on the theory that Defendant Metro does not have any policies with regard to the TSOR. However, Plaintiff's claim still fails because he does not allege, in more than a conclusory fashion, that any lack of policies was the moving force behind the violation of Plaintiff's constitutional rights.

maintain a Section 1983 claim against Defendant Metro based on the "failure to train or supervise as to the Ex Post Facto Clause" theory.

> **b. Defendant Metro's Alleged Failure to Train, and Inadequate Supervision of, Employees Regarding Interrogation and Detention of Those Seeking to Update their TSOR Information**

The Court finds that Plaintiff has failed to plausibly allege a Section 1983 claim against Defendant Metro based on its alleged failure to train and the inadequate supervision of employees regarding the interrogation and detention of those seeking to update their TSOR information. The SAC fails to allege in a non-conclusory fashion that any inadequacy in training is closely related to or actually caused the alleged injury. Accordingly, Plaintiff cannot maintain a Section 1983 claim against Defendant Metro based on the "failure to train or supervise as to the updating of TSOR information" theory.

As all of its theories fail, Count XII therefore will be dismissed with prejudice. Counts I-VIII also will be dismissed with prejudice for the aforementioned reasons. Thus, Defendant Metro will be terminated as a defendant in this case.

## IV. The State Defendants' Motion to Dismiss

### A. Whether Defendants Lee, Rausch, and Long are Proper Parties

Defendants Lee, Rausch, and Long move to dismiss Counts II, III, and VII, arguing that they are not proper parties in this case. The Court discusses this argument as it applies to each defendant in turn.

#### 1. Defendant Lee

Based on the Court's decision in Part I, the Court need analyze only whether Plaintiff has plausibly alleged Counts II, III, and VII against Defendant Lee. Although Plaintiff alleges that Defendant Lee, as the executive head of the State of Tennessee, maintains the registry (SAC ¶ 6),

he does not allege that Defendant Lee had anything to do with the remaining claims at issue here—the applicability of the TSOR Act to Plaintiff. Accordingly, Defendant Lee's Motion to Dismiss will be granted, and the Court will dismiss these claims against Defendant Lee with prejudice.

### 2. Defendant Rausch

Based on the Court's decision in Part I, the Court need analyze only whether Plaintiff has plausibly alleged Counts II, III, and VII against Defendant Rausch. The Court answers that question in the affirmative. The SAC alleges that Defendant Rausch is the Director of the TBI. (*Id.* ¶ 7.) As its director, he maintains and oversees the TSOR, which includes, *inter alia*, maintaining the database of sex offenders and developing registration forms. (*Id.*) He also supervises the TBI's General Counsel who regularly advises local law enforcement agencies about the TSOR. (*Id.*) The SAC also alleges that the TBI's General Counsel has provided Plaintiff's attorney with information about whether the TSOR's requirements apply to Plaintiff. (*Id.* ¶¶ 47-48.) As Chief Judge Crenshaw stated in a parallel case:

> The TBI's duties in the administration of Tennessee's statutory scheme are numerous and significant. TBI creates, maintains, and administers the sexual offender registry. Tenn. Code Ann. § 40-39-206(a); Tenn. Code Ann. § 38-6-110(a) . . . It makes registry information available to criminal justice agencies . . . While TBI may not have standalone authority to prosecute violations of the registry requirements, those prosecutions are merely the tip of a long spear that TBI itself constructs and provides.

*Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *10 (M.D. Tenn. Nov. 9, 2017). The TBI director is, therefore, the appropriate person against whom to bring a claim regarding whether Plaintiff is required to register on the TSOR. Accordingly, the Court will deny Defendant Rausch's Motion to Dismiss Counts II, III, and VII against him.

### 3. Defendant Long

Plaintiff states that he agrees to dismiss Defendant Long from all counts except Count I.

The Court construes Plaintiff's statement as a motion to amend the complaint to remove claims against Defendant Long under Counts II-VIII. Given that the time for Plaintiff to amend his pleading as a matter of course has passed, the complaint can be amended only upon agreement of the parties or the Court's leave. *See* Fed. R. Civ. P. 15(a)(2). Because the parties have seemingly agreed to effectively amend the complaint to dismiss these claims, the complaint is hereby so amended. Accordingly, Counts II-VIII against Defendant Long will be dismissed with prejudice. The Court further notes that pursuant to its ruling above, Count I has been dismissed based on Plaintiff's failure to allege that claim under Section 1983. Therefore, all claims against Defendant Long will be dismissed with prejudice, and he will no longer remain a defendant in this case.

### B.  Count II

Although the State Defendants move to dismiss the constitutional claims embodied in Count II, Paragraph 140 of the SAC alleges a theory under Count II as to which the State Defendants do not directly move to dismiss. Specifically, Plaintiff alleges the following:

> Whether or not Plaintiff is required to register as a sex offender under Tennessee law, as opposed to federal law, is crucial in determining whether he must register in other states, such as Alabama, while traveling to that state on a temporary basis for employment. Because defendants and plaintiff disagree on whether Tennessee law, as opposed to federal law, independently requires him to register, a live case or controversy is in play which can be resolved with court intervention and interpretation of the rights, obligations, and liabilities of the plaintiff.

(SAC ¶ 140.) The State Defendants did not move to dismiss Count II based on this theory, and the Court will not dismiss it *sua sponte*. Plaintiff can proceed (against Defendant Rausch) with Count II based on the theory alleged in Paragraph 140.

### C.  Count III

Although the State Defendants move to dismiss the constitutional claims embodied in Count III, Paragraph 148 of the SAC alleges a theory under Count III as to which the State Defendants do not directly move to dismiss. Specifically, Plaintiff alleges the following: "The

employment restriction [of the TSOR] does not apply to Plaintiff because his offense of conviction did not have a human victim, minor or adult." (SAC ¶ 148.) Later in the SAC, Plaintiff specifically requests that the Court enter a declaratory judgment stating, *inter alia*, that the TSOR does not apply to him where the provision is limited to a particular type of victim because his offense of conviction did not involve a human victim. (SAC ¶ 82.) The State Defendants do not move to dismiss Count III based on this theory, and the Court will not do so *sua sponte*. Plaintiff can proceed (against Defendant Rausch) with Count III based on the theory alleged in Paragraph 148.

### D. Count VII

The allegations discussed in Paragraphs 165, 166, and 168 are dismissed for the reason stated in Part I. However, the allegation in Paragraph 167 states, "Because the Tennessee Registry may only include information required to be reported by an 'offender' as defined under Tennessee law and because Plaintiff does not meet that definition, the Tennessee Bureau of Investigation may not enter information into its central database on an individual who does not have a qualifying conviction." (SAC ¶ 167.)

The State Defendants move to dismiss as to the allegation in Paragraph 167, appearing to argue that Plaintiff fails to plausibly allege Count VII because Plaintiff, meeting the definition of an "offender" as a matter of law, is required to register under the TSOR. The Court finds that the State Defendants have not adequately developed this argument. This issue is the subject of almost an entire brief from Plaintiff in support of his Motion for Partial Summary Judgment, and the State Defendants' argument consists only of a few sentences. The State Defendants' argument lacks adequate analysis of the statute with relevant principles of statutory construction and any relevant case law. The Court, therefore, finds the State Defendants' argument too underdeveloped to properly address. The Court will not construct the State Defendants' argument for them.

*See United States v. Zannino*, 895 F.2d 1, 8 (1st Cir. 1990) ("It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Accordingly, the State Defendants' Motion to Dismiss this allegation will be denied, and Plaintiff may proceed on Count VII (against Defendant Rausch) based on Paragraph 167.

**CONCLUSION**

The Court has plowed through literally dozens of theories set forth in a dizzying array of sometimes tortuous counts. The permutations of claims and defendants seem endless. Most of the claims set forth in the notably aggressive SAC do not survive. But some do.

For the foregoing reasons, the Court will rule as follows on the pending motions to dismiss. Defendant Clark and Morgan's Motion to Dismiss (Doc. No. 101) will be **GRANTED IN PART** and **DENIED IN PART**. As to Counts I-VIII, Defendants Clark and Morgan's Motion to Dismiss will **GRANTED** and those claims will be **DISMISSED WITH PREJUDICE**. As to Count IX, Defendant Clark and Morgan's motion to dismiss will be **DENIED**. The Court further notes that Plaintiff can pursue his Section 1983 claim based only on the alleged Fourth Amendment violation but not the alleged Fifth Amendment violation.

Defendant Franklin's Motion to Dismiss (Doc. No. 103) will be **GRANTED**. All counts alleged against Defendant Franklin (Counts I-VIII, X) will be **DISMISSED WITH PREJUDICE**.

Defendants Elliott and Rikal's Motion to Dismiss for Failure to State a Claim (Doc. No. 113) will be **GRANTED**. All counts alleged against Defendants Elliott and Rikal (Counts I-VIII, XI) will be **DISMISSED WITH PREJUDICE**.

Defendant Metro's Motion to Dismiss for Failure to State a Claim (Doc. No. 111) will be **GRANTED**. All counts alleged against Defendant Metro (Counts I-VIII, XII) will be **DISMISSED WITH PREJUDICE**.

The State Defendants' Motion to Dismiss (Doc. No. 108) will be **GRANTED IN PART** and **DENIED IN PART**. The Court will **GRANT** the State Defendants' Motion to Dismiss as to Counts I, IV, V, VI, and VIII. These counts will be **DISMISSED WITH PREJUDICE**. All counts against Defendants Lee and Long will be **DISMISSED WITH PREJUDICE**. The Court will **DENY** the State Defendant's Motion to Dismiss as to Counts II, III, and VII, insofar as those claims will remain pending against Defendant Rausch (and only Rausch) to the extent (and only the extent) indicated herein. Except to the extent indicated herein, all claims against Defendant Rausch will be dismissed.

Plaintiff's Motion for Partial Summary Judgment (Doc. No. 132) will also be **DENIED WITHOUT PREJUDICE**. Plaintiff's Motion for Partial Summary Judgment asks the Court to enter judgment in his favor on Count I and Count VII. (*See* Doc. No. 134 at 21.) In light of the Court's ruling on the motions to dismiss and the passage of time between now and the date the motion was originally filed (more than one year ago), Plaintiff can update his motion and refile it by **August 14, 2019**. The parties shall respond in accordance with the time and manner discussed in the Local Rules.

The following claims remain in this case: (1) as to Defendants Clark and Morgan, Count IX to the extent it is based on the Fourth Amendment; and (2) as to Defendant Rausch, Count II to the extent it is based on the theory delineated in Paragraph 140 of the SAC, Count III to the extent it is based on the theory delineated in Paragraph 148 of the SAC, and Count VII based on the theory delineated in Paragraph 167.

An appropriate order will be entered.

*Eli Richardson*
_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE