IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| QUINTON ROATH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:17-cv-00995 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| DAVID RAUSCH, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

Quinton Roath ("Plaintiff") is a Nashville-Davidson County, Tennessee resident who filed this lawsuit challenging the constitutionality of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 ("Act"), Tenn. Code Ann. §§ 40-39-201 to 218. David Rausch ("Defendant") is the Director of the Tennessee Bureau of Investigation ("TBI").[1]

In his (five-count) Third Amended Complaint (Doc. No. 245, "TAC"), which is the operative complaint,[2] Plaintiff asserts that the Act is unconstitutional because it violates the Ex Post Facto Clause (Count I), the First Amendment (Count III), and the Due Process Clause (Counts II, IV, and V). Plaintiff seeks declaratory and injunctive relief. (Doc. No. 245 at 29-32).

---

[1] David Rausch has been substituted for former TBI Director Mark Gwyn as a defendant and is the only remaining defendant in this case. (Doc. No. 153.)

[2] The initial Complaint (Doc. No. 1) was filed on June 29, 2017. Plaintiff filed his First Amended Complaint (Doc. No. 28) on September 29, 2017, followed by his Second Amended Complaint (Doc. No. 97) on January 8, 2018, before filing the TAC on December 16, 2021.

Now pending before the Court is "Defendant's Motion to Dismiss in Part" (Doc. No. 247, "Motion") seeking to dismiss Counts II and V under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The Motion is supported by a memorandum of law (Doc. No. 248). Plaintiff filed a response in opposition to the Motion (Doc. No. 251, "Response") to which Defendant filed a reply (Doc. No. 252).

## BACKGROUND[3]

The Tennessee General Assembly passed its first sex-offender registration law in 1994 ("1994 Act"). The 1994 Act required the TBI to maintain a confidential registry, the Tennessee Sexual Offender Registry ("TSOR"), with basic information about people who have been convicted of qualifying offenses. Over the years, the Act was expanded in scope several times before it was repealed and replaced with the current version.

Plaintiff's claims arise generally from his challenge to the requirement that he register in the TSOR based upon a conviction in this Court for obstructing enforcement under 15 U.C.S. § 1591(d). Plaintiff was not convicted of any actual unlawful or inappropriate sexual conduct with anyone (Doc. No 245 at 2) and claims that he should not be required to register in the TSOR. On or about July 2013, Pam Beck, at the time General Counsel for the TBI, stated that (in her opinion) Plaintiff did not need to register as a sex offender under Tennessee law. (*Id*. at 20). Later, on August 6, 2013, Jeanne Broadwell, the new General Counsel for the TBI, stated in an email that "at the time of [Plaintiff's] plea in 2010, neither of his convictions required state registration."

---

[3] The facts herein are taken from the TAC, which is the operative complaint in this case. For purposes of the instant Motion, the facts in the TAC are accepted as true, except to the extent that they are qualified herein (as for example by "Plaintiff alleges") to denote that they are not being taken as true but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true.

(*Id*.). Nevertheless, Plaintiff is currently registered in the TSOR through Robertson County where he resides. (*Id*. at 19). Plaintiff is unsure of whether employment and residency restrictions in the Act apply to him, (*id*. at 20), and has declined or quit jobs that would have required him to travel interstate or intrastate. (*Id*. at 23).

Plaintiff now seeks removal from the registry, alleging that the Act is unconstitutional because it violates the Ex Post Facto Clause (Count I), the First Amendment (Count III), and the Due Process Clause of the Fourteenth Amendment (Counts II, IV, V). Defendant seeks the dismissal of Counts II and V under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. According to Defendant, dismissal is appropriate because Count II does not assert a plausible violation of Plaintiff's right to travel and Count V is barred by the applicable statute of limitations. (Doc. No. 247).

## ANALYSIS

### I. Count II – Right to Travel

The right to travel is a fundamental right protected under the Due Process Clause. Plaintiff alleges in Count II that the Act violates his fundamental right to travel "interstate, intrastate, and extra-state" because the Act is not narrowly tailored to serve a compelling state interest. (Doc. No. 245 at 25). The Court will evaluate Plaintiff's claim of the alleged restriction on his right to travel interstate, intrastate, and extra-state (i.e., internationally), respectively, below.

When interpreting a state statute, federal courts must follow state interpretations of those statutes, and must predict how the state's highest court would interpret the statute if it has not yet done so. *See Bevan & Assocs., LPA, Inc. v. Yost*, 929 F.3d 366, 374 (6th Cir. 2019). The primary objective of statutory construction is to ascertain and give effect to the intention of the legislature as expressed in the text of the statute. *In Re Adoption of A.M.H.*, 215 S.W.3d 793 (Tenn. 2007). When the language of a statute is clear and unambiguous, courts will give effect to that intent as

expressed in the plain meaning of the statutory language. *State v. Strode*, 232 S.W.3d 1 (Tenn. 2007).

    A.    *Interstate Travel*

Section 40–39–203(a)(3) of the Act states:

> An offender who resides and is registered in this state and who intends to move out of this state shall, within forty-eight (48) hours after moving to another state or within forty-eight (48) hours of becoming reasonably certain of the intention to move to another state, register or report to the offender's designated law enforcement agency the address at which the offender will reside in the new jurisdiction.

Plaintiff first argues that this provision requires an offender to report *in person* to his designated law enforcement agency after moving to another state or within forty-eight (48) hours of becoming reasonably certain of the intention to move to another state. (Doc. No. 245 at 23). Therefore, Plaintiff claims, § 203(a)(3) substantially burdens him because if he were to travel to a new state for a temporary job and decide to stay there, he would be required to return to Tennessee to report this move in person. (Doc. No. 245 at 23).

However, as Defendant has pointed out, the text of this portion of the statute clearly and unambiguously does not require in-person reporting. "Presuming that the Legislature means what it says—and does not mean what it does not say—we follow the principle of *expressio unius est exclusio alterius*. This canon of statutory interpretation means that 'the expression of one thing implies the exclusion of others.'" *Effler v. Purdue Pharma L.P.*, 614 S.W.3d 681, 688–89 (Tenn. 2020) (quoting *Rich v. Tenn*. Bd. of Med. Exam'rs, 350 S.W.3d 919, 927 (Tenn. 2011)). Here, in contrast to § 40-39-203(a)(1) of the Act, which specifies when a registrant must "report in person," § 40-39-203(a)(3) does not include the words "in person"; therefore, under the above canon, that phrase should not be read in to § 40-39-203(a)(3). Moreover, § 40-39-203(a)(1) is about a registrant "reporting" his or her own person—reporting *himself or herself* in the sense of checking

in somewhere. This is to be contrasted with § 40-39-203(a)(3), which is talking about an entirely different kind of reporting, and one that lends itself very naturally to the "reporting" being done long distance (including virtually or telephonically); § 40-39-203(a)(3) is not about a registrant "reporting" himself (checking in); instead it is about a registrant *reporting to* the offender's designated law enforcement agency certain i*nformation*, i.e., the address at which the offender will reside in the new jurisdiction, except when the Act specifies that the appearance must be in person. As Defendant asserts, the Act naturally should be read to permit an offender to make this particular kind of "reporting" in a manner other than in person.

Second, Plaintiff argues that Tennessee law substantially affects his ability to travel to Alabama because if he is required to register in the TSOR then he would be required to register in Alabama "immediately" on traveling there. (Doc. No. 245 at 24). This is because Alabama Code § 15-20A-5(37) requires registration of anyone who committed any "crime in another state . . . if that jurisdiction also requires that anyone convicted of that crime register as a sex offender in that jurisdiction." *See also* Ala. Code § 15-20A-10(b) (requiring registration "immediately" upon "accepting employment").

Other district courts in the Sixth Circuit have rejected arguments like Plaintiff's on the basis that such allegations are too speculative to allege a plausible claim for relief. *See, e.g.*, *Doe v. Gwyn*, No. 3:17-CV-504, 2018 WL 1957788, at *9 (E.D. Tenn. Apr. 25, 2018) (rejecting as "purely speculative" and inadequate to plausibly state a claim for relief the plaintiff's argument that if he travels to another state, he may have to register as a sex offender in other jurisdictions in order to comply with sex offender laws in those jurisdictions); *Jackson v. Rausch*, No. 3:19-CV-377, 2020 WL 7496528, at *5 (E.D. Tenn. Dec. 21, 2020) (same). Plaintiff argues that this case is distinguishable because, unlike the plaintiffs in *Gwyn* and *Jackson* (whose argument contemplated

only hypothetical plans to travel to another state), here Plaintiff has "clearly alleged that he turned down jobs that require him to travel and specifically mentioned Alabama registration requirements that are directly tied to Tennessee's requirements." (Doc. No. 251 at 4). But even if those allegations do distinguish Plaintiff's interstate travel claim, Plaintiff's argument still fails because "[he] has presented no allegation or legal argument as to how this [D]efendant can be liable for [P]lantiff's inability to comply with the laws of other states." *Gwyn*, 2018 WL 1957788, at *9; *Rausch*, 2020 WL 7496528, at *5.

Plaintiff's claim fails additionally because the Alabama statute to which he cites is unlikely to affect him. A relevant subsection states in full:

> Immediately upon establishing a new residence, accepting employment, accepting a volunteer position, or beginning school attendance, the adult sex offender shall appear in person to register with local law enforcement in each county in which the adult sex offender establishes a residence, accepts employment, accepts a volunteer position, or begins school attendance.

Alabama Code § 15-20A-10(b).[4] The TAC asserts that Plaintiff "has turned down employment that would have required him to regularly travel to Alabama." (Doc. No. 245 at 24). But this allegation (even accepted as true) would not qualify as "accepting employment" under Alabama Code § 15-20A-10(b). The statute is ambiguous as to whether "accepts employment" refers to where the employment is accepted or where the work of accepted employment is to be completed (or both). Even construing the statute in favor of Plaintiff (whereby one could be said to have "accept[ed] employment" wherever the work of that employment is to be completed), Plaintiff has

---

[4] "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect." *Univ. of S. Alabama v. Progressive Ins. Co.*, 904 So. 2d 1242, 1246 (Ala. 2004) (quoting *IMED Corp. v. Sys. Eng'g Assocs. Corp.*, 602 So. 2d 344, 346 (Ala. 1992)). The Court interprets Alabama Code § 15-20A according to these principles.

not alleged that he turned down employment that would have required him to complete work in Alabama. Instead, Plaintiff has alleged that he turned down work "that would have required him to regularly *travel* to Alabama." (Doc. No. 245 at 24). Section 15-20A-4(5) of the Alabama Code specifically excludes "any time spent traveling as a necessary incident to performing the work." Based on this exclusion, Plaintiff could not be deemed to have "accept[ed] employment" in a county of Alabama merely by traveling from his position of employment in Tennessee into Alabama. Accordingly, Plaintiff being required to travel to Alabama (but not to complete any work in Alabama—as far as the TAC reveals) as a condition of his employment in Tennessee simply would not constitute "accepting employment" in Alabama and thus would not trigger the Alabama statute's requirement for Plaintiff to register as an offender in Alabama "immediately" upon traveling into Alabama.

Even if Plaintiff's argument could surmount the above obstacles, to the extent that Plaintiff would be required to register as a sex offender in other states (such as Alabama) while traveling to them, the Sixth Circuit (and many other circuits) have held that such a requirement does not actually violate Plaintiff's right to travel. To state a claim of a violation of the fundamental right to travel, a plaintiff must show that the burden on the right to travel is significant. *See Beydoun v. Sessions*, 871 F.3d 459, 467 (6th Cir. 2017). In *Beydoun*, the plaintiffs complained that being placed on a screening list for flights caused them to be delayed and miss many flights, but the Sixth Circuit held those incidents were "negligible and therefore do not implicate the right to travel." *Id*. at 468. Similarly, the registration obligations that could be imposed on Plaintiff if he were to travel to a state outside of Tennessee would not significantly burden his right to travel.

This conclusion is consistent with case law from multiple circuits discussing the constitutionality of the federal Sex Offender Registration and Notification Act ("SORNA").

SORNA requires a sex offender to register—and keep his registration current—in each jurisdiction where he resides, is an employee, or is a student. 34 U.S.C. § 20913(a), (c). But as several sister circuits have concluded, those registration obligations do not burden a sex offender's movement in a way that violates a person's constitutional right to travel. *See, e.g., United States v. Holcombe*, 883 F.3d 12, 17–18 (2d Cir. 2018); *Bacon v. Neer*, 631 F.3d 875, 878 (8th Cir. 2011); United States v. Byrd, 419 F. App'x 485, 491 (5th Cir. 2011); *United States v. Shenandoah*, 595 F.3d 151, 163 (3d Cir. 2010), *abrogated on other grounds by Reynolds*, 565 U.S. 432, 445 (2012); *United States v. Ambert*, 561 F.3d 1202, 1210 (11th Cir. 2009); *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 826 (6th Cir. 2020), *cert. denied sub nom. Willman v. Wilkinson*, 141 S. Ct. 1269 (2021), *reh'g denied sub nom. Willman v. Garland*, 141 S. Ct. 1731 (2021).

Though the statute at issue in the above cases is the SORNA (a federal law), Tennessee's SORA is equally subject to the notion that requiring registration in a jurisdiction in which an individual is employed does not infringe on the right to travel. The Fourth Circuit has drawn the same conclusion with respect to a state sexual offender registry statute ("VSOR") similar to SORNA. In *Prynne v. Settle*, the Fourth Circuit court reasoned:

> Prynne claims her right to travel is burdened by VSOR because she must notify other states she visits of her registry status, which often triggers those states to require her to register on their corresponding registries. Additionally, if she endeavors to relocate her residence to a different state, she must first notify Virginia State Police, so the agency can notify her intended future residence of her registry status. Though these requirements might discourage her from traveling to avoid the hassle of the notification requirements, VSOR does not actually prohibit Prynne from leaving Virginia or entering any other state. Thus, the statute does not restrict her fundamental right to interstate travel.

*Prynne v. Settle*, 848 F. App'x 93, 104 (4th Cir. 2021). The Court similarly finds here that any registration obligations triggered by other states as a result of requirements in the Act with which Plaintiff must comply would not significantly burden Plaintiff's right to travel.

For these reasons, Count II will be dismissed insofar as it alleges a violation of a right to interstate travel.

B. *Intrastate Travel*

Plaintiff asserts also that the Act violates his right to travel intrastate. Tenn. Code Ann. § 40–39–203(a)(1) provides that "an offender must register or report within forty-eight hours of establishing certain contact with Tennessee." *Doe v. Gwyn*, No. E2010-01234-COA-R3CV, 2011 WL 1344996, at *5 (Tenn. Ct. App. Apr. 8, 2011).[5] "The contact with Tennessee that triggers the registration requirement is the establishment or changing a primary or secondary residence in Tennessee, establishment of a physical presence at a particular location in Tennessee, becoming employed or practicing a vocation in the state or becoming a student in this state." *Id.*

The parties dispute the meaning of "physical presence" as used in § 40-39-203(a)(1). Plaintiff claims that the "physical presence" provision affects his ability to travel to other counties and cities within Tennessee because (according to Plaintiff) it would require him to report in person to a local law enforcement agency within 48 hours of establishing a physical presence in a different city or county within Tennessee. (Doc. No. 245 at 23; Doc. No. 251 at 6). Defendant disagrees with this interpretation of the provision, stating that it "should not be read as restricting a person already registered in Tennessee who is merely traveling within the state . . . ." (Doc. No. 248 at 4).

---

[5] The Sixth Circuit has noted:

> In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state supreme court. If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data. *See id.* "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state] Supreme Court would decide otherwise." *Kingsley Assoc. v. Moll PlastiCrafters, Inc.,* 65 F.3d 498, 507 (6th Cir. 1995).

*Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citation omitted). Herein, when the Court cites a decision of the Tennessee Court of Appeals, it does so with confidence that the Tennessee Supreme Court today would not decide differently with respect to the cited proposition(s).

According to Defendant, § 40-39-203(a)(1) must be read in conjunction with the other words around it, which include "establishing or changing a primary or secondary residence," and "becoming employed or practicing a vocation or becoming a student in this state." Defendant asserts that reading the physical presence provision within the context of the words surrounding it clearly demonstrates that the reporting requirement naturally applies only to people moving into Tennessee, "or, perhaps if a homeless person is changing his or her established location within Tennessee." (*Id.*).

The Court agrees with Defendant's narrower interpretation of § 40-39-203(a)(1). "It is a familiar principle of statutory construction that words grouped in a list should be given related meaning." *Third Nat. Bank in Nashville v. Impac Ltd., Inc.*, 432 U.S. 312, 322 (1977). Here, "physical presence" must be read in the context of the group of words in the list in which the phrase appears, all of which refer to major events that would allow one to establish sufficient contact within the state of Tennessee to fall within its jurisdiction (e.g., changing one's address, becoming employed, enrolling as a student, or practicing a vocation in the state of Tennessee). Within this context, it would be unusual to read the statute as requiring an offender to register or report within 48 hours every time he physically entered a different city or county within Tennessee. Instead, the natural reading of "physical presence" as used in this provision is to account for a homeless person changing his or her established location (even if it is not a "residence") within the State, as none of the other requirements (changing one's residence, becoming employed, enrolling as a student, or practicing a vocation in the state of Tennessee) would likely apply to a homeless person. At least once, the Tennessee Court of Appeals similarly interpreted this provision to apply only to major life changes, such as moving residences, enrolling as a student, or moving into the state of Tennessee for a job. *See State v. Whitecotton*, No. E200700335CCAR3CD, 2008 WL 1813103, at

\*1 (Tenn. Crim. App. Apr. 23, 2008) (citing § 40-39-203(a)(1)) ("Within forty-eight hours of establishing a residence, becoming employed, or becoming a student in Tennessee, sexual offenders must register in person with the designated law enforcement agency having jurisdiction over the offender's residence, place of employment, or educational institution.").

Accordingly, the Court finds that § 40-39-203(a)(1) does not substantially burden Plaintiff's right to travel intrastate, and Count II will be dismissed insofar as it alleges a violation of a right to intrastate travel.[6]

### C. *International Travel*

Unlike the right to intrastate and interstate travel, extra-state (i.e., international) travel is not a fundamental right[;] it is subject to reasonable government regulation. *Haig v. Agee*, 453 U.S. 280, 306 (1981). The Act provides in pertinent part that:

> Each offender shall report to the designated law enforcement agency at least twenty-one (21) days before traveling out of the country; provided, that offenders who travel out of the country frequently for work or other legitimate purpose, with the written approval of the designated law enforcement agency, and offenders who travel out of the country for emergency situations shall report to the designated law enforcement agency at least twenty-four (24) hours before traveling out of the country.

Tenn. Code Ann. § 40-39-204(h). Plaintiff argues that § 40-39-204(h) is unreasonable and "completely arbitrary" because (in Plaintiff's view) it does not define certain terms contained

---

[6] Plaintiff has stated that if Defendant concedes (as Defendant has) that Plaintiff need not register in each and every county or city where he establishes a "presence" within Tennessee, then this directly addresses part of Count II. (Doc. No. 251 at 6). Nevertheless, Plaintiff asserts that this concession should not lead to dismissal of the claim; instead (according to Plaintiff) the appropriate remedy would be to issue a declaratory judgment that Plaintiff need not register in each and every county or city where he establishes a "presence" within Tennessee. (*Id*.). However, having concluded that Plaintiff's right to travel interstate does not appear to be violated by the Act, issuing the judgment Plaintiff seeks would be an impermissible advisory opinion. *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Commissioners*, 53 F.4th 1014, 1020 (6th Cir. 2022) ("Federal courts cannot issue advisory opinions."). The Court therefore declines to issue such a judgment and instead finds that dismissal of the claim is appropriate.

therein, such as "other legitimate purpose" or "emergency situations." Plaintiff asserts also that the 21-day notice requirement is arbitrary and unreasonable.

This Court addressed a substantively identical claim from Plaintiff's Second Amended Complaint in the Court's Memorandum Opinion at Doc. No. 180 ("Opinion"), wherein the Court held that Plaintiff "failed to adequately allege that he has standing to the extent Count II is based on the right to international travel, particularly because Plaintiff has failed to adequately allege that he has suffered an injury in fact." (Doc. No. 180 at 19, n.8). The relevant portion of the Opinion is excerpted below:

> Plaintiff has failed to adequately allege that he has standing to the extent Count II is based on the right to international travel, particularly because Plaintiff has failed to adequately allege that he has suffered an injury in fact. As discussed in more detail herein, to satisfy Article III's standing requirements, a plaintiff must, inter alia, show that he has suffered an injury-in-fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). "A 'concrete' injury," on the other hand, "must be 'de facto'; that is, it must actually exist." *Id*. Unless an alleged injury satisfies both requirements, it cannot give rise to standing under Article III. *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1193 (M.D. Tenn. 2017). Plaintiff alleges merely that he asked Defendant Clark whether the restrictions of Tenn. Code Ann. § 40-39-204, including the need for written approval of the designated law enforcement agency for travel out of the country, are applicable to him. (SAC ¶ 53.) This is not sufficient to adequately allege an injury to confer standing. Plaintiff does not allege that he sought to take an international trip for which he was denied permission or that he was restricted from international travel. Plaintiff also does not allege that he ever travelled internationally and was required to comply with the reporting requirements when doing so. Rather, he merely discusses harm from alleged travel within the United States. The Court, therefore, finds that Plaintiff cannot move forward with Count II to the extent he bases this claim on international travel.

(Doc. No. 180 at 19, n.8). Because the TAC similarly fails to allege facts stating how Plaintiff has been injured by the 21-day registration requirement for international travel, the Court need not revisit its analysis on this issue. Rather, the Court adopts the above reasoning from its prior Opinion

in concluding that Plaintiff has failed to adequately allege that he has standing to the extent Count II is based on the right to international travel. Accordingly, Count II will be dismissed insofar as it alleges a violation of a right to international travel.

Plaintiff has failed to state a claim that his right to travel interstate, intrastate, or internationally has been violated. Accordingly, the Court will dismiss Count II in its entirety.

## II. Count V – Due Process

Count V of the TAC alleges that requiring Plaintiff to register as a sex offender in Tennessee violates due process because Plaintiff "has not received any notice or opportunity to challenge Defendant's inclusion of him on [TSOR]." (Doc. No. 245 at 29). Defendant argues that this claim should be dismissed because it is barred by the statute of limitations.

The parties agree that under the statute of limitations period applicable to Plaintiff's § 1983 claims, the limitations period is one year after the time the cause of action accrued. *See* Tenn. Code Ann. § 28–3–104(a)(3); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000). The parties agree also that "[accrual occurs] when the plaintiff has 'a complete and present cause of action.'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007). But the parties dispute when the one-year limitations period began to run (i.e., when the cause of action accrued). Defendant asserts that the limitations period began to run (at the very latest) by November 2014 because (as Plaintiff has acknowledged) the State was already enforcing the Act against Plaintiff at that time. (Doc. No. 248 at 7) (citing Doc. No. 245 at 18-19). Because Plaintiff did not file this lawsuit until June 29, 2017 (approximately two and a half years after November 2014), Defendant argues that Plaintiff's claims are barred by the one-year statute of limitations.

In response, Plaintiff invokes the continuing violation doctrine, stating

> [E]very day that the plaintiff is on the registry with information that is only required of those who meet the definition of 'offender' under Tennessee law (which

>  Plaintiff does not) and faces arrest for violating restrictions that can only be imposed on those meeting that definition under Tennessee law is another cause of action.

(Doc. No. 251 at 8). Thus, Plaintiff argues, "[t]he [T]SOR injures him daily and a new limitations period begins to run every day the [T]SOR remains in force against him." (*Id*.). The question for the Court, therefore, is whether Plaintiff's claim presents a situation in which Defendant's violations can be characterized as "continuing," in which case the statute of limitations would not bar Plaintiff's claims. *See Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 521-23 (6th Cir. 1997) (holding that a "law that works an ongoing violation of constitutional rights" inflicts a "new injury" each day that it remains in effect and that "a new limitations period [begins] to run each day as to that day's damage.").

Plaintiff relies on two cases to support his argument that his inclusion in the TSOR constitutes a continuing violation. The first case is *Kuhnle Brothers, Inc. v. Cnty of Geauga*, 103 F.3d 516 (6th Cir. 1997). In *Kuhnle*, a trucking company brought various claims after the county issued a resolution barring through truck traffic on a specific road, including claims for violations of due process in relations to property rights and liberty rights. *Id*. at 518. The Sixth Circuit held that the plaintiff's substantive due process claim for deprivation of property was time-barred because it accrued when the resolution was enacted (which was outside the applicable limitations period). *Id*. at 520-21. However, the Court held that the plaintiff's claim for deprivation of liberty was not time-barred, because "each day that the invalid resolution remained in effect, it inflicted 'continuing and accumulating harm' on [the plaintiff]." *Id*. at 521-22. Plaintiff asserts that *Kuhnle* precludes Defendants' statute of limitations defense because, like the deprivation of liberty claims in *Kuhnle*, here the TSOR creates an "ongoing violation" of Plaintiff's constitutional rights by punishing him every day even though (according to Plaintiff) he is not a "sexual offender" as defined by Tennessee law. (Doc. No. 248 at 8).

Plaintiff relies also on *Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117 (M.D. Tenn. Nov. 9, 2017), wherein Judge Crenshaw discussed the applicability of the continuing-violations theory to various Section 1983 challenges to Tennessee's SORA. Referring to *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007), Judge Crenshaw noted:

> For claims to be timely . . ., it is not sufficient for Plaintiffs' injuries to be continuing: Defendants' violations must also be continuing. How to draw the line between "continuing injury" and "continuing violation" in the § 1983 context has, unfortunately, sometimes eluded easy distillation. Even the test offered in *Eidson* adds only limited clarity: it provides that a violation is continuing if "the defendant's wrongful conduct" is continuing, but that leaves entirely open the question of what constitutes the defendant's "wrongful conduct"—a question not necessarily much easier than determining what constitutes its "violation." The Court will therefore look to Sixth Circuit precedents and persuasive authority for guidance.

*Id*. at *12.

In looking to Sixth Circuit precedent for guidance, Judge Crenshaw summarized *Kuhnle* before turning to *Eidson*. In *Eidson*, the Sixth Circuit court concluded that "[a]ny harmful effects resulting from actions allegedly taken by defendants after the juvenile court proceeding are appropriately characterized as 'continuing ill effects,' which do not make out a continuing violation." *Id*. at 637. Judge Crenshaw drew the following conclusions from comparing the two Sixth Circuit cases:

> The contrast between *Kuhnle* and *Eidson* shows that the question of what constitutes a defendant's 'wrongful conduct' for the purpose of accrual of the statute of limitations is closely related to the nature of the constitutional protection at issue. In *Eidson*, the plaintiff alleged a denial of due process, and therefore the wrongful conduct lasted only as long as the deprivation directly attributable to the stage of proceedings at which due process was denied. The plaintiff in *Kuhnle*, however, argued that the enforcement of the provisions of the law at issue amounted to an ongoing unconstitutional deprivation of liberty interests, and therefore the [Sixth Circuit] concluded that the violation itself was ongoing.

2017 WL 5187117, at *12.

Based on these conclusions, Judge Crenshaw determined that two of the plaintiff's claims in *Haslam* were barred by the statute of limitations because they "[we]re directed not at the ongoing effects of the registration regime requirements on [the plaintiffs], but the original imposition of those requirements." *Id*. at *14. On the other hand, Judge Crenshaw concluded that several of the plaintiff's remaining claims[7] were timely because they qualified as continuing violations given that they were premised not "on some procedural deprivation that occurred at the time that [the registration] requirements were imposed, but on the threat of significant consequences for future conduct." *Id*.

In the instant case, Plaintiff's claim in Count V is for a violation of due process due to his inclusion in the TSOR without adequate notice or an opportunity to challenge that inclusion. (Doc. No. 245 at 29). This due process challenge is the type of challenge that is barred by the statute of

---

[7] As for the remaining claims that Judge Crenshaw concluded were timely, he described them as follows:

> Count 1 pleads that Doe #1 has been retroactively made subject to the various restrictions of the Act in violation of the Ex Post Facto Clause, U.S. Constitution, Art. I, § 10, cl. 1;
>
> Count 2 pleads that the Act violates Doe #1's fundamental right to travel under the Due Process Clause, U.S. Const. Amend. 14, § 1;
>
> Count 3 pleads that the Act violates Doe #1's fundamental right to "engage in the common occupations of life" under the Due Process Clause;
>
> Count 4 pleads that the Act violates Doe #1's fundamental right to direct the upbringing of his children under the Due Process Clause;
>
> Count 5 pleads that the Act's restrictions and disclosure obligations regarding internet activity violate Doe #1's right to free speech under the First Amendment, U.S. Const. Amend. 1'
>
> Count 8 pleads that the Act, and in particular the Exclusion Zone regime, violates due process by imposing criminal liability on wholly passive conduct without appropriately apprising Doe #2 of his duty to comply;
>
> Count 9 pleads that the Act violates due process by imposing restrictions that are unconstitutionally vague and/or render compliance impossible.

2017 WL 5187117, at *6-7 (internal citations omitted).

limitations under *Haslam* (by way of *Eidson* and *Kuhnle*) in that it is directed not at the ongoing effects of the registration requirements, but at the original imposition of those requirements—and in particular at the lack of advance notice and opportunity to be heard on whether Plaintiff should have to register.[8] (*Id*.). The fact that the registration requirements imposed upon Plaintiff continue to affect him are merely "continuing ill effects" of the requirement, "which do not make out a continuing violation." *Eidson*, 510 F.3d at 637. Accordingly, the Court finds that this case does not present a situation in which Defendant's violations can be characterized as "continuing," and therefore the statute of limitations bars Count V.

## CONCLUSION

For the reasons stated herein, the Motion at Doc. No. 247 will be GRANTED. An appropriate corresponding order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[8] Plaintiff claims that his inclusion in the TSOR constitutes a violation of his right both to procedural due process and substantive due process. (Doc. No. 245 at 29). The Court's analysis as to whether the alleged violation constitutes a continuing violation, however, is driven not by the distinction between a violation of procedural or substantive due process, but by the distinction of whether Plaintiff's challenge is directed at prospective harm resulting from the violation or at harm that has already occurred. There is some correlation between the two distinctions, but they are different distinctions, and the Court here focuses on the latter distinction.

For example, in *Kuhnle*, the plaintiff's claim for deprivation of property (though a substantive due process claim) was found not to be a continuing violation (and thus was time-barred) because the deprivation of property was fully effectuated at the time the relevant resolution was enacted. *Kuhnle*, 103 F.3d at 521. By contrast, the plaintiff's claim for deprivation of his liberty interest (banning through truck traffic) challenged harm that was ongoing and that the plaintiff suffered each day, even after the enactment of the relevant resolution. *Id*. Thus, the plaintiff's claim for deprivation of liberty was not time-barred, because it was a continuing violation. Although both of these claims asserted substantive due process violations, the Sixth Circuit reached different respective conclusions as to whether they constituted continuing violations.

Accordingly, while the Court acknowledges that a procedural due process claim, by its nature, is perhaps less likely to be considered a continuing violation (and may in fact never constitute a continuing violation (*see Kuhnle*, 103 F.3d at 521, n.5)), the fact that a claim is characterized as substantive rather than procedural does not necessarily mean that the claim is per se a continuing violation that is not time-barred.